[Civ. No. 934. Fourth Appellate District.—May 13, 1932.]

THE TRAVELERS INSURANCE COMPANY, HARTFORD, CONNECTICUT, Appellant, v. LILLIE W. BYERS, Respondent.

O'Melveny, Tuller & Myers and J. R. Girling for Appellant.

Glen H. Munkelt and Harden & Green for Respondent.

SCOVEL, J., *pro tem.*—On June 7, 1928, James C. Byers signed an application for an insurance policy in the Travelers Insurance Company, the appellant herein. The application was in the usual form and contained the following questions, answers and statements by Mr. Byers:

"17. Have you within the past 5 years suffered any mental disease or infirmity or any bodily disease or infirmity? A. No.

"18. Have you within the past 5 years received medical advice or attention? A. No. Surgical advice or attention? A. No. . . .

"20. Are you now in good health? A. Yes."

The application was taken by an agent of appellant, E. A. Egge, and without further medical examination appellant's insurance policy No. 1433740 was issued to Byers on August 14, 1928, effective from June 18, 1928. This application and policy will hereafter be referred to as the "Egge application" and "Egge policy".

On November 21, 1928, said Byers again made application for another policy with appellant, signing a similar form of application, in which the following questions and answers were set forth:

"17. Have you within the past 5 years suffered any mental disease or infirmity or any bodily disease or infirmity? A. No.

"18. Have you within the past 5 years received medical advice or attention? A. Yes, slight colds, influenza. Surgical advice or attention? A. No. . . .

"20. Are you now in good health? A. Yes.

"21. Give details explaining all affirmative answers to questions 11 to 19 inclusive, as indicated by the following headings:

| Illness or Condition Slight | How Long ill? | Compli- cations? | Date of complete recovery? | | No. of attacks. | Physicians consulted. |
|---|---|---|---|---|---|---|
| Colds. | 2 days | none | Month | Year | | |
| | | | odd times. | | 3 or 4 | |
| Influenza | 10 days | none | | | | |
| | | Slight case, might have been only a cold. | Oct. or Nov. | 1923 or 1924. | 1 | John C. E. Nielsen, M. D." |

On December 14, 1928, appellant's medical examiner examined Byers, finding him to be an "excellent risk". Two questions and the answers given thereto by Byers during the medical examination are as follows: "12. What physician did you last consult? A. None. 13. Name and residence of usual medical attendant or family physician. A. None." This application was taken by C. J. Stafford, and appellant's policy of insurance issued thereon on December 28, 1928, effective December 27, 1928. This application and policy will hereafter be referred to as the "Stafford application" and "Stafford policy".

On April 29, 1929, James C. Byers was killed as the result of a fall from the fourth floor of Mercy Hospital in the city of San Diego. Respondent, Lillie W. Byers, surviving wife of James C. Byers, filed proof of death with appellant and demanded the amount of both insurance policies, she being named as beneficiary therein. Appellant refused to make payment and filed its complaint seeking to rescind both policies on the ground that it had been induced to issue the policies by reason of certain fraudulent representations on the part of James C. Byers, and alleging that at the time the applications for the policies were made he had represented the following: (a) That he had not within the previous five years suffered any mental disease or infirmity or any bodily disease or infirmity; (b) that within the previous five years he had received no surgical advice or attention and within said period received medical advice or attention for slight colds, causing him illness for two days, and influenza causing him illness for ten days; (c) that he was then in good health. The complaint further alleged that such state-

ments and representations were false and made by said James C. Byers, knowing them to be false and untrue.

Respondent's answer is in the form of a denial. In addition thereto she filed a cross-complaint asking for recovery of the amounts of the policies. Appellant answered the cross-complaint, seeking to avoid liability on the policies by reason of the alleged fraudulent representations made by the insured in his application for the policies above set forth. At the trial the court found in favor of the defendant on the complaint and in .favor of the cross-complainant and against the cross-defendant on the cross-complaint. The court further found that the representations alleged were made, except that no representation was made in the application for the Egge policy as to his having had medical advice or attention for slight colds or influenza, and that such representations were true.

Appellant attacks the judgment and findings as not supported by the evidence. We will consider the Stafford policy first. There is no evidence whatsoever showing that within the five years previous to making the application, or within five years previous to the issuance of the policy thereon, the insured, James C. Byers, had ever suffered any mental disease or infirmity, or received any surgical advice, nor that he was not in good health when the applications were signed or when the policies were issued except for a possible kidney condition hereinafter discussed. Neither does the transcript set forth any evidence showing that the statement in the Stafford application that the applicant had received medical advice or attention for slight colds and for influenza within five years prior to the date thereof was untrue. Thus the only alleged false statements remaining are as to whether or not the insured had within the previous five years suffered any bodily disease or infirmity or within such time received medical advice or attention. The testimony of Dr. Worthington, called by appellant, shows that the insured called at his office sixteen times during November, 1926, January, February and May, 1927, and January, 1928. It does not appear, however, what these consultations were for, whether for an illness of the insured or in regard to an illness of some member of his family. Dr. Sherill, called by appellant, testified that the insured was admitted to the Scripps Metabolic Clinic at La Jolla at 9 A. M.,

November 22, 1926, and was dismissed at 2 P. M., November 23, 1926; that while at the hospital the insured received either medical advice or attention. It does not appear anywhere in the transcript why the insured was admitted to the clinic at La Jolla and as suggested by counsel for defendant in his brief, for all that does appear, he may have been checking up on his general physical condition, merely as a precautionary measure.

Bodily infirmity has been defined in *French* v. *Fidelity & Casualty Co.,* 135 Wis. 259 [17 L. R. A. (N. S.) 1011, 115 N. W. 869, 875], as meaning "a settled disease, an ailment that would probably result to some degree in the general impairment of physical health and vigor". And the words "bodily infirmity as used in an accident policy exempting the insurer from liability only includes an ailment or disorder of a somewhat established or settled character, and not merely a temporary disorder arising from a sudden and unexpected derangement of the system". To the same effect is *Meyer* v. *Fidelity & Casualty Co.,* 96 Iowa, 378 [59 Am. St. Rep. 374, 65 N. W. 328].

The word "illness" as used in a question in an application for insurance as to whether or not an applicant had ever had any illness is defined in *Poole* v. *Grand Circle, W. O. W.,* 18 Cal. App. 457 [123 Pac. 349, 350], as meaning a disease or ailment of such a character as to affect the general soundness and healthfulness of the system and not a mere temporary indisposition which does not tend to undermine and weaken the constitution of the insured. It "relates to matters which have a sensible, appreciable form, . . . and applies ordinarily to matters of a substantial character and not to a slight and temporary indisposition, speedily forgotten".

In the absence of any evidence whatsoever showing for what purpose the insured here consulted Dr. Worthington or entered the hospital, it cannot be presumed that such consultation or hospitalization was for more than a temporary illness, or perhaps a mere physical examination. We do not think that it can be construed as showing the insured at that time to be suffering from a "bodily disease or infirmity" within the foregoing definitions. As to whether or not these visits contradict and render false the insured's statement in the application that he had not within the five-year period

received any medical advice or attention, falls within the same category.

In *Fidelity Casualty Co.* v. *Cross,* 131 Miss. 632 [95 South. 631], it is held that a question in an application for insurance which calls for a disclosure of the medical or surgical attention previously received by the applicant does not require an applicant to disclose the fact of previous medical examinations which show that the applicant was in good health and physically sound at the time such examinations were made, as such examinations do not come within the meaning of the term "medical or surgical attention received" as used in the application. Our own courts have had occasion to construe and define what "consulting a physician" as used in an insurance policy application means. In *Poole* v. *Grand Circle, W. O. W., supra,* the application contained the question: "When did you last consult a physician," to which the plaintiff answered: "Not since childhood." The application was dated October 19, 1908. It appeared that approximately two years prior to the date of the application a physician had visited the applicant, at which time she was confined to her bed, suffering from an acute cold as a result of which there was temporary difficulty during the menstrual period; that on October 1st following, the applicant called at the physician's office, when an examination was made and everything found normal except that the womb was a trifle small and somewhat sore, due to congestion resulting from the cold; that early in 1907 the physician gave the applicant a general tonic to build her up and give her an appetite. In an action upon the policy the insurance company set up the foregoing question and answer as a false representation, contending that the foregoing evidence showed that the applicant had consulted a physician since her childhood, contrary to her statement in the application. In construing what "consulting a physician" as used in the application meant, the court states on page 460: "A reasonable construction of the question implies that it should be interpreted as relating to a consultation as to some disease or illness with which the applicant was or had been afflicted, not to some feeling of trivial discomfort or temporary indisposition not affecting the general health."

The question as to the insured, Byers, having received medical advice or attention in the Stafford application,

refers to medical advice or attention for some ailment which would affect the general soundness and healthfulness of his system, and unless his consultations with Dr. Worthington or his entrance to the hospital were for such a purpose, his answer to the question was true. The presumption, however, is against fraud, and as stated in *Truett* v. *Onderdonk,* 120 Cal. 581 [53 Pac. 26], this presumption approximates in strength that of innocence of crime. One who seeks relief from fraud must allege it and prove it by clear and satisfactory evidence. And in the absence of any evidence to the contrary, it must be presumed in support of the judgment that the consultations with Dr. Worthington and the entrance of the insured into the hospital were at the most but for minor ailments of which no disclosure was necessary by the insured.

It will be noted that in the report of the physical examination for the Stafford policy the applicant also failed to disclose the name of the last physician he had consulted professionally and stated that he had no usual medical attendant or family physician. The evidence does not reveal the name of any usual medical attendant or family physician of the insured. No issue is raised either in appellant's complaint or in its answer to the cross-complaint as to any concealment of the name of the physician last consulted by the insured. There being no issue as to any fraud in such concealment, the truth or falsity thereof is not material.

The rules of law above set forth are equally applicable to the Egge application and policy. In this application, however, no statement was made by the insured that he had had ''slight colds for two days, three or four times, and a slight attack of influenza, which might have been only a cold, lasting for a period of 10 days'', within the five-year period as was disclosed in the Stafford application. Such slight illness, however, falls within the rule of *Poole* v. *Grand Circle, W. O. W., supra,* as being a mere indisposition not affecting the general soundness and healthfulness of the system nor tending to undermine and weaken the constitution of the insured. Under such circumstances concealment thereof is not fraudulent and an action or defense founded thereon cannot be sustained.

In addition to the evidence hereinbefore set forth the surgeon who performed the autopsy upon the body of

Mr. Byers following his death testified that the body pathologically showed a chronic condition of the kidneys and that by chronic condition he meant a condition of over six months' duration. He did not, however, venture an opinion as to how long the condition had existed. The Egge application was made and the policy thereon issued more than six months prior to the death of the insured. It must be presumed therefore that the condition was not present at the time the application was made. ■ If the autopsy surgeon's testimony is true the kidney condition must have existed at the date of the Stafford application and policy, however. Nowhere in the transcript is there any evidence remotely tending to show that the insured had any knowledge whatsoever of such condition at the time the Stafford application was signed and when he stated that he was in good health and had not suffered any bodily disease or infirmity within the preceding five years. If it be assumed that these statements were untrue by reason of the presence of a chronic kidney condition still there is nothing to show that they were ''wilfully false'', as is required to support an action for rescission of a policy of insurance on the ground of fraud or sustain a defense based on the ground of fraud in an action upon the policy. ■ A failure to disclose facts of which the applicant is ignorant will not afford ground for avoiding the policy because of concealment (32 Cor. Jur. 1272). A presumption of intent to deceive is only raised when the statements are made with knowledge of their falsity (*Whitney* v. *West Coast Life Ins. Co.*, 177 Cal. 74, at 80 [169 Pac. 997]), and the burden is upon the party asserting the untruthfulness of a statement to show not only that the statement was erroneously made, but that it was wilfully so. (*O'Connor* v. *Grand Lodge, A. O. U. W.*, 146 Cal. 484, 494 [80 Pac. 688].)

The finding of the court, therefore, that the statements set forth in plaintiff's complaint and answer to the cross-complaint were true is supported by the evidence.

■ Appellant's final contention is that the court erred in refusing to admit in evidence plaintiff's exhibit No. 6 for identification, being the certificate of proof of death forwarded with the demand for payment of one of the policies, claiming that it was alleged in the cross-complaint that a certificate of proof of death had been forwarded with

the claim by the beneficiary and unless forwarding thereof were proven, no liability under the policy could attach. Each cross-complaint alleged that a certificate of proof of death was so furnished and each answer of appellant to the cross-complaints admitted the allegation. There was therefore no issue upon the matter; the offer of the statement of proof of death was not material, and it was properly denied.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.