[Civ. No. 7612.   Fourth Dist.   Sept. 2, 1965.]

JEFFERSON STANDARD LIFE INSURANCE COMPANY, Plaintiff and Appellant, v. RAY DRAPER ANDERSON, Defendant and Respondent.

Luce, Forward, Hamilton & Scripps and Charles H. Forward for Plaintiff and Appellant.

Reed & Brockway and William F. Reed for Defendant and Respondent.

COUGHLIN, J.—Plaintiff and cross-defendant, Jefferson Standard Life Insurance Company, brought this action to rescind a policy of life insurance in which a man named Coltrain was the insured and his business partner, a man named Anderson, the defendant and cross-complainant herein, was the beneficiary. Anderson filed a cross-complaint seeking recovery under the policy. Judgment was in favor of Anderson and against the life insurance company on the complaint and the cross-complaint. Plaintiff and cross-defendant appealed.

The defendant Anderson made the application for insurance on the life of his partner Coltrain which culminated in issuance of the subject policy.

Plaintiff sought rescission of the policy, following Coltrain's death, upon the ground, as alleged in its complaint, that Coltrain falsely represented, through the application for insurance, ". . . That he had never been a patient in a hospital; that he had never suffered from or been suspected of having any ailment or disease of the heart or chest and that

while he had consulted a doctor for a cause not mentioned in the application, this cause was an upper respiratory infection occurring one time, on January 17, 1961 and that the doctor he had consulted in regard thereto was Dr. Roman Fait.''

The contention of plaintiff as set forth in the pretrial order was that Coltrain, in the application for insurance, falsely stated, ''. . . That he had never been a patient in a hospital and that he had never suffered from or been suspected of having any disease of the heart or chest.'' It also was set forth in the pretrial order that one of the issues to be determined was: ''Whether the decedent Arthur W. Coltrain made material misrepresentations in his application for the issuance of the insurance policy sufficient to warrant rescission of the policy.'' It is pertinent to note at this juncture, because plaintiff contends that the trial court did not find upon all of the issues presented by the pleadings, that, considered as a whole, the pretrial order did not extend the issues respecting the alleged misrepresentations relied upon by plaintiff beyond those alleged in its complaint. The statement in the pretrial order that one of the issues to be determined was whether Coltrain ''made material misrepresentations in his application'', in view of the former declaration in the order respecting plaintiff's contentions in the premises, did not authorize consideration of any alleged misrepresentation in the application not specifically included in the contentions made by plaintiff as set forth in the pretrial order or in the complaint.

The trial court found, in substance, that Coltrain did not make any false representations as alleged in the complaint which would void the policy.

In 1957 Coltrain contacted his family physician, Dr. Fait, complaining of facial paralysis which Dr. Fait diagnosed as Bell's palsy, a temporary condition, caused by exposure to cold attributable to riding in a convertible with the top down. About six months later, i.e., in January 1958, Coltrain and a man named Zarick, who were co-chairmen for the forthcoming American Cancer Society drive, entered Scripps Clinic and Research Foundation, in La Jolla, for a four-day physical checkup to publicize the slogan for the drive ''Give your check with a Check-up''. The hospital staff was not advised that the checkup was motivated by the desire to publicize the cancer drive slogan. Coltrain was given a routine physical examination. In the course thereof, in response to inquiries eliciting his medical history, he told a staff doctor that his legs became tired after walking four or five blocks,

and of his facial paralysis about which he had consulted Dr. Fait, which he said was accompanied by a numbness in his left hand a change in his voice for about 10 minutes, all of which cleared up except for a slight numbness in the lower lip. Numerous tests were run on Coltrain by several doctors all resulting in normal reactions. After discharge from the clinic, Coltrain was given a written summary of clinical findings stating, in part, that he had a mild arterial insufficiency of the lower legs for which no treatment was recommended except reduction of cigarette consumption but otherwise his health was normal for a man of his age. It was not concluded that he had arteriosclerosis.

Three years after the checkup at Scripps Clinic Anderson applied for insurance from the plaintiff upon the life of Coltrain with whom, as a partner, he was engaged in the automobile sales and service business. Thereupon Coltrain was given a medical examination by plaintiff's medical examiner. As a part of this examination Coltrain was asked certain questions and the examiner wrote the replies thereto on the application form which was signed by Coltrain as the proposed insured following a declaration by him that he had read the answers and statements contained therein and they were full, complete, true and correctly recorded. Among the questions and answers propounded and given, insofar as pertinent to the issues presented by the pleadings in this case are the following:

"2. HAVE YOU ever suffered from or been suspected of having any ailment or disease of ...
B. The Heart, Lungs, Pleurae or Chest?     A. No.

"3. HAVE YOU EVER . . .
F. Been a patient in a hospital, sanitarium or institution?     A. No.

"9. HAVE YOU consulted a doctor for any cause not included in the above answers?     A. Yes."

On the application form, below the foregoing group of questions and answers, was the following:

"11. DETAILS IN CONNECTION WITH QUESTIONS 1 THROUGH 9 WHICH ARE ANSWERED 'YES' ABOVE"

| "Question Number | Name of Ailment, Disease or Injury | No. of Attacks | Date | Duration | Results | Name and address of every physician consulted |
|---|---|---|---|---|---|---|
| 9 | Upper Respiratory Infection | One | 17 Jan '61 | 2 Weeks | Good Recovery | Dr. Roman Fait |

Upon receipt of the information contained in the application the plaintiff directed a communication to Dr. Fait advising him that Coltrain had applied for life insurance and asking him to furnish information concerning Coltrain's medical history and physical condition upon the form submitted therewith. Dr. Fait, upon the form so submitted, advised plaintiff that he had attended Coltrain in May 1959, the purpose of which was a general physical examination and the result of which indicated a normal physical condition with advice to lose 10 pounds; in February 1960, when the complaint was a neuretic pain in the right arm and shoulder which lasted for two months with a diagnosis of "Hypertropolis lipping adjacent 6th cervical interspace" requiring neck traction and "physio treatment", with the notation "Recovered"; and in December 1960, for congestive bronchial cough which lasted 10 days, the diagnosis being "Sinusitis acute, Bronchitis acute," with treatment "antibiotic therapy," and the notation "uneventful recovery". Also on the submitted form Dr. Fait stated that an EKG and a chest X-ray in May 1959 had been made, both of which were normal, and a cervical spine X-ray in March 1960 showed "Minimal hypertrophic arthritis"; reported on applicant's "Present condition" with the phrase "good health"; and, following the statement: "Please record any other information which might have a bearing on this person's health", wrote the word "None".

The subject policy was issued on January 27, 1961. Coltrain died December 31, 1962. Cause of death was "arteriosclerotic carotid artery disease, bi-lateral." The evidence supports the conclusion that Coltrain did not know he had arteriosclerosis until a short time prior to death.

Among other things, the trial court found: "That it is not true the decedent COLTRAIN made any false representation as to his physical condition which would affect his insurability and concerning which any question was asked in the application for insurance."

The foregoing finding disposes of plaintiff's contention based on the allegation in its complaint that Coltrain falsely represented that he never had suffered from or been suspected of having any ailment or disease of the heart or chest. Even assuming Coltrain was suffering from such an ailment or disease at the time he answered the questions in the application he had no knowledge thereof. ■ Where an applicant for insurance is asked whether he has suffered from or

been suspected of having a specific ailment, his answer in the negative, although contrary to the fact, if the result of ignorance and made in good faith is not a ground for avoidance of the policy. (*Cohen* v. *Penn Mut. Life Ins. Co.*, 48 Cal.2d 720, 726 [312 P.2d 241]; *Telford* v. *New York Life Ins. Co.*, 9 Cal.2d 103, 106 [69 P.2d 835]; *Travelers Ins. Co.* v. *Byers*, 123 Cal.App. 473, 481 [11 P.2d 444].)

The finding aforesaid also disposes of the contention of plaintiff based upon the allegation in the complaint Coltrain falsely represented ''that while he had consulted a doctor for a cause not mentioned in the application, this cause was an upper respiratory infection occurring one time, on January 17, 1961.'' The allegation in question is based upon that part of the application containing the question, ''HAVE YOU consulted a doctor for any cause not included in the above answers?'', to which Coltrain replied, ''Yes.'' This answer was correct and revealed the information sought.

■ Plaintiff claims the information furnished by the writing under that portion of the application bearing the notation, ''DETAILS IN CONNECTION WITH QUESTIONS . . . ANSWERED 'YES' ABOVE'', was incomplete in that it did not relate the ''details'' in connection with every occasion when Coltrain consulted a doctor for any cause not included in the answers theretofore given, and for this reason constituted a concealment of material facts which would avoid the policy. The phrase in the subject question ''any cause'' must have been understood to refer to a ''cause'' of the nature included in the ''answers'' to questions theretofore appearing in the application, i.e., a cause arising out of an ailment, disease, or injury. That part of the form soliciting details concerning questions answered ''Yes'', specifically directs attention to, ''Name of Ailment, Disease, or Injury.'' An inquiry of this nature, under the settled rule, does not relate to minor indispositions but is construed as ''referring to serious ailments which undermine the general health.'' (*Ransom* v. *Penn Mut. Life Ins. Co.*, 43 Cal.2d 420, 427 [274 P.2d 633]; *Cohen* v. *Penn Mut. Life Ins. Co., supra*, 48 Cal.2d 720, 725; *Pierre* v. *Metropolitan Life Ins. Co.* 22 Cal.App.2d 346, 349 [70 P.2d 895]; *Poole* v. *Grand Circle, W.O.W.*, 18 Cal.App. 457, 459 [123 P. 349].) ■ There is substantial evidence supporting the conclusion implied in the finding of the court that the facial affliction about which Coltrain consulted Dr. Fait in 1957 was a temporary indisposition, minor in fact, and believed to be such by both of them. (See *Pierre* v. *Metropolitan Life Ins. Co.*,

*supra,* 22 Cal.App.2d 346, 349.) This was a minor indisposition immaterial to the subject inquiry, and Coltrain's failure to disclose such did not invalidate the policy . (*Id.*)  ██  Likewise, by this inquiry Coltrain was not asked to disclose that he had been examined by a doctor at Scripps Clinic. He did not seek the examination to ascertain the cause of any "Ailment, Disease or Injury" and, thus, did not "consult a doctor" in the clinic for this purpose. In addition, the report given him by the clinic following his examination did not reveal the existence of any ailment of a serious nature. The staff physician conducting the examination testified there was insufficient evidence therefrom to make a diagnosis of arteriosclerosis, and that the leg tiredness of which Coltrain complained could have been caused by poor muscular condition or excessive smoking. The evidence adequately supports the court's finding that Coltrain's failure to list the examination given him at Scripps Clinic was not a "cause" for his consulting a doctor and did not constitute a false representation.

██ Although not included in the false representations alleged in the complaint, plaintiff asserts Coltrain's negative answer to the question, "Are You Aware of Any physical defect or complaint not mentioned above?", as a further false representation. However, even though the findings of the court are limited to the allegations of the complaint, the evidence, under the rules heretofore noted, dictates the conclusion as a matter of law that Coltrain's answer to the subject question did not constitute a false representation. There is no showing that at the time of his examination by the plaintiff's medical examiner Coltrain knew of any "physical defect or complaint" of a serious nature from which he then was suffering or had suffered.

██ With respect to the asserted false representation that Coltrain never had been a patient in a "hospital, sanitarium or institution", whereas he had entered Scripps Clinic for a physical checkup, the court concluded that the question propounded in the application whether he had been a patient in a hospital did not call for information respecting his entry into the clinic for a routine physical checkup. The issue for determination is whether, under the circumstances of this case, Coltrain was a "patient" of Scripps Clinic during the time he was undergoing the physical examination. Of importance is the fact that he did not solicit the examination to ascertain the cause of any current or past illness,

ailment, injury, or physical complaint. There was testimony, including medical dictionary definitions, from which the court was entitled to conclude that a "patient", within the meaning of that term as used in the subject questionnaire, is a person who is ill or suffering from disease or injury for which he is the recipient of medical or surgical treatment, including diagnostic services. The court found, and this testimony supports the finding that Coltrain "was not a patient at Scripps Clinic and Research Foundation in the sense that the word 'patient' is used in the application for insurance."

In support of its position that Coltrain was a patient in a hospital as that term is used in its application, plaintiff cites the decisions in *Guardian Life Ins. Co. of America* v. *Clum,* 106 F.2d 592 and *Di Pasqua* v. *California etc. Life Ins. Co.,* 106 Cal.App.2d 281 [235 P.2d 64]. The facts in these cases are materially different from those in the case at bench in that, contrary to the situation here, the insured in the cited cases, who had answered "No" to the question whether he had ever been a patient in a hospital, had entered a hospital for and received diagnostic services to ascertain the cause of existing complaints. Coltrain entered the hospital to publicize a cancer campaign slogan; had no existing complaints; and was the recipient of a routine general checkup. The distinction between the status of a person entering a hospital to receive diagnostic services in connection with a current complaint and one who enters a hospital for a routine checkup, as respects the information elicited through an insured's application, was noted by this court in *Travelers Ins. Co.* v. *Byers, supra,* 123 Cal.App. 473, 478.

Where, as related to the circumstances in a particular case, the form of a question soliciting information respecting a proposed insured's physical condition is ambiguous, that interpretation thereof against avoidance of the policy will be accepted. (*Turner* v. *Manhattan Life Ins. Co.,* 320 F.2d 553, 558; *Narver* v. *California State Life Ins. Co.,* 211 Cal. 176, 180 [294 P. 393, 71 A.L.R. 1374]; generally see *Arenson* v. *National Automobile & Cas. Ins. Co.,* 45 Cal.2d 81, 83 [286 P.2d 816]; *Ransom* v. *Penn Mut. Life Ins. Co., supra,* 43 Cal.2d 420, 425.) The wording of the question in light of other questions asked is important. (*Pierre* v. *Metropolitan Life Ins. Co., supra,* 22 Cal.App.2d 346, 349; *Turner* v. *Manhattan Life Ins. Co., supra,* 320 F.2d 553, 558.) All of the questions on the subject application solicited information

concerning serious ailments or injuries. In light of this fact, the proposed insured, in answering the question, "Have you ever been a patient in a hospital?", was entitled to conclude that the inquiry was directed to his being in the hospital on account of an ailment or injury from which he was suffering. In *Cohen* v. *Penn Mut. Life Ins. Co., supra,* 48 Cal.2d 720, 723, the court considered a form of application which specifically inquired of the proposed insured whether he "ever had a health or physical *examination*," or had "ever been in a clinic, hospital, sanitarium or asylum for observation, treatment or *diagnosis*", and asked for "dates, reasons, names and addresses of persons who made *examinations*". (Italics added.) The specificity of the questionnaire under consideration in the cited case points up the generality with attendant ambiguity of that in the instant case.

The finding of the trial court that Coltrain's negative answer to the question whether he had been a patient in a hospital was not false, is supported by evidence of circumstances justifying the bona fide belief that the inquiry was directed not merely to the ascertainment of whether he had been in a hospital, but whether he had been in a hospital on account of an illness or injury.

The judgment is affirmed.

Brown (Gerald), P. J., and Whelan, J., concurred.

# REPORTS OF CASES

DETERMINED IN

## THE APPELLATE DEPARTMENTS OF THE SUPERIOR COURT

OF THE

## STATE OF CALIFORNIA