Ruth S. MILLER, Plaintiff-Appellant,

v.

REPUBLIC NATIONAL LIFE INSURANCE COMPANY, a Texas Corporation, Defendant-Appellee.

No. 84–2565.

United States Court of Appeals, Ninth Circuit.

Argued Feb. 13, 1986.

Submitted Feb. 24, 1986.

Decided May 14, 1986.

Melvyn D. Silver, Suden & Silver, San Jose, Cal., for plaintiff-appellant.

John L. Boos, Pettit & Martin, San Francisco, Cal., for defendant-appellee.

Before GOODWIN, HUG, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

## I. BACKGROUND

This case is before us for the second time. *See Miller v. Republic National Life Insurance Co.*, 714 F.2d 958 (9th Cir. 1983) (*Miller I*).

On November 15, 1977, Fred Miller was solicited by his son Alan, a Republic National Life Insurance agent, to purchase a life insurance policy in the amount of $50,000. On November 21, Fred Miller was examined by a doctor chosen by Republic. In his report to Republic, the examining doctor stated that Miller was in "good health." The next day, Miller signed an application in which he stated that he was in "good health." During the period of November 29 through December 4, Miller experienced three events that his neurologist described as "strange thoughts."[1] According to the neurologist

> [On November 29] when [Miller] and his wife were going out to lunch he had a bottle of Schweppes Tonic Water with some sugar in it. Immediately following this, he had a very sweet taste in his mouth and smelled a sweet smell, which was an almost overwhelming smell. He then had a peculiar thought that he was having a conversation with someone that took place in the far distant past. Asso-

---

1. While Republic refers to these events as "hallucinations," the treating neurologist refused to so characterize them.

ciated with this, he had a light-headed feeling. This went on for about twelve or fifteen minutes and then cleared up. During this time, his wife states that he just didn't look like himself. When she tried to talk with him, he would answer, but only very tersely.

[On November 30], after eating a fig, [Miller] again had a light-headed, warm feeling, and experienced the same sweet taste and smell to a lesser degree, and he had the feeling like he was having a conversation with somebody that took place in 1800. This was not as strong as the feeling the day before and lasted only a few minutes.

[On December 4], his wife says that he seemed to have difficulty discussing things, and he told her that he had the thought that he was dressed in a costume.

Also on December 4, Miller paid the first premium and received a receipt for it. The next day Miller went to his doctor to consult him about the three events. The doctor thought that Miller might have a brain tumor and recommended that he undergo testing. On December 7, Miller was examined by a neurologist, and the next day Miller was diagnosed as having a brain tumor. Surgery was performed on December 14, and on December 15 Republic denied Miller's application. On January 5, 1978, Republic returned the uncashed check for the premium to Miller. Miller died on September 5, 1978.

Ruth Miller's claim under the policy was denied by Republic and she brought suit. In *Miller I*, we reversed the district court's grant of summary judgment in favor of Republic, holding that under applicable California law, and the terms of the application and the receipt, Republic had agreed to insure Miller if Miller's health was such that he was insurable on December 4. We also held that Republic had the burden of showing that, based on the medical examinations conducted for it, Miller was uninsurable on December 4. The district court subsequently ruled that Republic was unable to demonstrate on the basis of medical examinations that Miller was uninsurable on December 4. Republic argued, however, that its inability to demonstrate uninsurability was due to Miller's breach of his duty to disclose certain information to it, and that, accordingly, there was no coverage under state law. The district court allowed Republic to proceed to trial on this issue. The trial ended in a jury verdict in favor of the insurance company. Ruth Miller appealed, arguing that two of the jury instructions were erroneous, that the district court incorrectly admitted a letter into evidence, and that she should have been granted a directed verdict. She does not contend that the district court's actions were beyond the scope of our remand in *Miller I* or that our prior decision foreclosed the issue of the alleged breach of the duty to disclose.

## II. THE DUTY TO DISCLOSE

Republic claims that between November 29 and December 4, Miller concealed material information that he had a duty to disclose, namely the occurrence of the three "strange thoughts," and as a result, under California law Republic was not required to pay under the policy. The district judge instructed the jury that:

An applicant, after the insurance medical examination, *prior to the payment of the premium,* has a continuing duty to disclose a serious change in his medical condition, if it was evident to him, or *if it would be evident to a reasonable person,* or if he is diagnosed by a physician as having a serious medical condition, during that period of time. If you find that Fred Miller had a duty to disclose certain facts pertaining to his state of health as of December 4, 1977, and that Fred Miller failed to disclose those facts, and if you further find that Republic would not have issued the policy if those facts had been disclosed, then you may find that Republic is not liable under the policy. (emphasis added)

In reviewing jury instructions in a diversity action, "we look to state law for the correct substance of jury instructions, [but]

the question whether an incorrect instruction is prejudicially erroneous is a procedural one requiring application of federal law." *Pollock v. Koehring Co.*, 540 F.2d 425, 426 (9th Cir.1976). An instruction is prejudicially erroneous if "looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Id.*[2]

Under Cal.Ins.Code § 330 (Deering 1976),[3] "[n]eglect to communicate that which a party knows, and ought to communicate, is concealment." Section 332 requires in pertinent part that "[e]ach party to a contract of insurance ... communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material." Sections 330 and 332 on their face, however, do not speak to the time period during which the duty to disclose exists. The court in *Security Life Insurance Co. v. Booms*, 31 Cal.App. 119, 122, 159 P. 1000, 1001 (1916), looked to the predecessor of section 356 to provide an answer. Section 356 states, as did its predecessor, that "[t]he completion of the contract of insurance is the time to which a representation must be presumed to refer." Accordingly, the *Booms* court held that the various representations in the application were to be considered to be representations as to the applicant's health *at the time the insurance contract was completed*, not merely at the time the application was filled out. Thus, in order to avoid making false representations at the time of completion, the applicant had a duty to disclose any material changes in her health that occurred between the time the application was filled out and the time the contract was completed.

■ The presumption in section 356 is a rebuttable one, however, and it is a question of fact whether it has been rebutted. *See Metropolitan Life Insurance Co. v. Devore*, 66 Cal.2d 129, 137, 56 Cal.Rptr. 881, 886, 424 P.2d 321, 326 (1967). Thus, if the presumption is rebutted, and the representations in the application in fact refer to an earlier time than the completion of the contract, under the *Booms* rule the duty to disclose will end at a time before the completion of the contract. As a result, the instruction that the duty to disclose necessarily continued until the premium was paid (*i.e.* when the contract was completed) was erroneous. The jury should have been instructed that it could find that the duty to disclose ended before the premium was paid.

We must now decide precisely what Fred Miller was obligated to disclose. While *Booms* held that the applicant must disclose any change "as would influence the judgment of the [insurer] as to the advisability of accepting the risk," 31 Cal.App. at 122, 159 P. at 1001, later decisions have considerably refined the test.

Under current law, while a failure to disclose is improper even if there is no intent to deceive, *Thompson v. Occidental Life Insurance Co.*, 9 Cal.3d 904, 916, 109 Cal.Rptr. 473, 480, 513 P.2d 353, 360 (1973), the applicant's knowledge and belief must be considered. First, there is no breach of the duty to disclose if the applicant is ignorant of the relevant information. *Id.; Ransom v. Penn Mutual Life Insurance Co.*, 43 Cal.2d 420, 426, 274 P.2d 633, 637 (1954); *Jefferson Standard Life Insurance Co. v. Anderson*, 236 Cal.App.2d 905, 909–10, 46 Cal.Rptr. 480, 483 (1965); *Travelers' Insurance Co. v. Byers*, 123 Cal.App. 473, 481, 11 P.2d 444, 447 (1932). Second, there is no breach of the duty to disclose if the applicant, acting in good faith, does not understand the significance of the information he fails to disclose. *Thompson*, 9 Cal.3d at 916, 109 Cal.Rptr. at 480, 513 P.2d at 360; *Ransom*, 43 Cal.2d at 426, 274 P.2d at 637; *MacDonald v. California-Western States Life Insurance Co.*, 203 Cal.App.2d 440, 448, 21 Cal.Rptr. 659, 664

**2.** After a review of the record, it appears that Ruth Miller properly made and preserved her objection to the instruction. Accordingly, we do not apply the "clear error" standard that Republic contends we ought to. *See* Fed.R. Civ.P. 51.

**3.** All subsequent references are to Cal.Ins.Code, unless otherwise indicated.

(1962). A lay person will not be held to the level of knowledge or understanding that a doctor or other expert might have. *Cohen v. Penn Mutual Life Insurance Co.*, 48 Cal.2d 720, 726, 312 P.2d 241, 244 (1957).

The rationale behind these exceptions is simple and straightforward. It would be "patently unfair" to allow the insurer to avoid its obligations under the policy on the basis of information that the applicant did not know, or alternatively, did not fully understand. *See Metropolitan Life Insurance Co. v. Devore*, 66 Cal.2d 129, 140, 56 Cal.Rptr. 881, 888, 424 P.2d 321, 328 (1967) (interpreting "sound health" clause). The burden is on the insurer to prove that the applicant breached the duty to disclose material facts. *Olson v. Standard Marine Insurance Co.*, 109 Cal.App.2d 130, 137, 240 P.2d 379, 384 (1952).

■ Accordingly, Miller had a duty to disclose only those changes in his health that he, acting in good faith, believed were material. If he did not understand that the occurence of three "strange thoughts" indicated that there had been a material change in his health, then the second exception discussed above applies, and there was no breach of the duty to disclose. Because the jury instruction quoted above stated that there was a duty to disclose if a hypothetical reasonable person would have understood the significance of the change in health, regardless of what Miller himself understood, the jury instructions were erroneous.

Viewing the instructions as a whole, we hold that they did not fairly and correctly cover the substance of the applicable law because first, they did not allow the jury to determine when the duty to disclose ended, and second, they required the jury to consider the understanding and knowledge of a reasonable person, rather than Miller's actual knowledge and understanding. Accordingly, we are required to reverse.

## III. DIRECTED VERDICT

We must consider Ruth Miller's argument that she was entitled to a directed verdict, because if she is correct there will be no need for a retrial despite the erroneous jury instructions.

■ In determining whether a directed verdict is appropriate, we apply federal law even though this is a diversity case. *Browne v. McDonnell Douglas Corp.*, 698 F.2d 370, 371–72 (9th Cir.1982) (per curiam), *cert. denied*, 461 U.S. 930, 103 S.Ct 2092, 77 L.Ed.2d 301 (1983). A directed verdict can be granted if the evidence permits only one reasonable conclusion as to the verdict. *Peterson v. Kennedy*, 771 F.2d 1244, 1256 (9th Cir.1985). All of the evidence must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of that party. *Id.* After so reviewing the record, we simply cannot say that it would be impossible for a reasonable jury to find first, that the duty to disclose continued until payment of the premium, or second, that Fred Miller realized prior to December 4 that there had been a material change in his health. Accordingly, the district court did not err in refusing to grant Ruth Miller a directed verdict.

## IV. CONCLUSION

The district court did not err in denying Ruth Miller's motion for a directed verdict, but because it incorrectly stated the law in the jury instructions regarding the duty to disclose, we reverse the judgment of the district court and remand the matter for a new trial. As a result, we need not address the appellant's remaining contentions.

REVERSED AND REMANDED.

GOODWIN, Circuit Judge (dissenting).

Assuming that the challenged instruction was not a meticulous rendition of California law, I cannot believe that it influenced the verdict. It was impossible to read the mind of the deceased, and jurors were entitled to assess the probabilities. The probabilities were that the deceased knew that something was gravely wrong. The timing of the transaction, the family relationship with the insurance producer, and the sud-

den haste to get this insurance in force were all before the jury. I would hold the error, if any, to be harmless and affirm the judgment.