In re ASBESTOS CASES. (Two Cases)

Hoo Kin CHANG and Ethel F.O. Chang, Plaintiffs/Appellees,

v.

JOHNS–MANVILLE SALES CORPORA-TION, formerly known as Johns–Man-ville Products Corp., et al., Defendants,

and

Raymark Industries, Inc., Successor to Raybestos–Manhattan, Inc., Defendant/Appellant.

Charles CHUN, Raymond Judd and Car-inthia Judd, Moses Ho and Fanny Ho, Richard Lau and Janet C. Lau, Plain-tiffs/Appellees,

v.

JOHNS–MANVILLE SALES CORPORA-TION, formerly known as Johns–Man-ville Products Corp., et al., Defendants,

and

Raymark Industries, Inc., Successor to Raybestos–Manhattan, Inc., Defendant/Appellant.

Nos. 85–1912, 85–1913.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 17, 1987.

Decided May 23, 1988.

**524**

Don Howarth, Los Angeles, Cal., Paula Devens, Honolulu, Hawaii, for defendant/appellant.

L. Richard DeRobertis, Honolulu, Hawaii, for plaintiffs/appellees.

Before CANBY and BOOCHEVER, Circuit Judges, and TAKASUGI,* District Judge.

CANBY, Circuit Judge.

## INTRODUCTION

Plaintiff-appellees Hoo Kin Chang and Charles Chun worked for more than thirty years at the Pearl Harbor Naval Shipyard before retiring in 1976. In 1980, they brought these negligence and products liability actions against defendant-appellants Raymark, Owens–Illinois, Eagle–Picher, and other manufacturers for asbestos-related injuries. The cases were the subject of

global settlement negotiations along with 139 other cases filed in state and federal courts. Chang and Chun's actions were consolidated and tried together in United States District Court for the District of Hawaii.

Following four weeks of trial and several days of deliberations, the jury returned separate special verdicts in favor of plaintiffs on a product liability theory. The district court reduced the verdicts to reflect that portion of liability attributable to defendants that had settled. The court then entered final judgments of $60,000 for Chun and $43,000 for Chang. The court also awarded prejudgment interest.

Defendant-appellants challenge interrogatories submitted to the jury, various jury instructions and the award of prejudgment interest to plaintiffs. We affirm the judgment and, because we find the issues on appeal to have been frivolous, we award attorneys' fees to plaintiffs. Fed.R.App.P. 38.

## DISCUSSION

A. *Jurisdiction and Standard of Review*

Jurisdiction in the district court was based on diversity of citizenship. 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

 State law controls the substance of jury instructions in diversity cases. *Miller v. Republic Nat. Life Ins. Co.*, 789 F.2d 1336, 1338–39 (9th Cir.1986). The question of whether an incorrect instruction is prejudicially erroneous is governed by federal law. *E.g., Pollock v. Koehring Co.*, 540 F.2d 425, 426 (9th Cir.1976). Prejudicial error results when, "looking to the instructions as a whole, the substance of the applicable law was [not] fairly and correctly covered." *Id., quoted in Miller*, 789 F.2d at 1339. "[T]he instructions and interrogatories must fairly present the issues to the jury ... If the issues are fairly presented, the district court has broad discretion re-

* Honorable Robert M. Takasugi, United States District Judge, Central District of California, sitting by designation.

garding the precise wording." *Carvalho v. Raybestos–Manhattan, Inc.*, 794 F.2d 454, 455 (9th Cir.1986) (citations omitted); *see Los Angeles Memorial Coliseum Comm. v. N.F.L.*, 726 F.2d 1381, 1398 (9th Cir.), *cert. denied*, 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984).

## JURY INTERROGATORIES

Defendants Owens–Illinois and Eagle Picher contend that two of the district court's special interrogatories to the jury misled the jury and relieved plaintiffs of their burden of proving all the elements of their causes of action. The interrogatories were: [1]

1. On what date was Hoo Kin Chang informed or on what date should he have known that this disease was a result of the Defendants' negligence or Defendants' defective products?

2. Were one or more asbestos-containing products of any of the defendants listed on Chart One identified and used at Pearl Harbor Naval Shipyard from the year 1943 to 1976?

Defendants contend that the first interrogatory improperly assumed the existence of Chang's disease, the existence of negligence or a defect in defendants' product, and causation. They contend that the second interrogatory improperly permitted a finding of liability simply because of the presence of one of defendants' products at Pearl Harbor, without any showing of plaintiffs' exposure to it and resulting injury.

If the jury had been furnished no other interrogatories and been given no instructions, there might be some substance to defendants' arguments. In light of the record, however, the arguments are frivolous. Other interrogatories separately required the jury to determine whether defendants were negligent, whether their products were defective, and whether the negligence or defect was a substantial factor causing any injuries of plaintiffs. These questions made it perfectly clear that the jury was not to assume from the first interrogatory that injury, causation, and negligence or defect were foregone conclusions.

The record also makes abundantly clear the fact that the second interrogatory was a response to contentions by one or more defendants, including Owens–Illinois, that their products had never reached Pearl Harbor. If the jury answered that question favorably to any defendant, the jury was not required to answer the additional questions regarding any negligence of that defendant, any defect in its products, or whether that negligence or defect caused plaintiffs any injury. In context, the second interrogatory, like the first one, could not have misled the jury.

■ Our review of all of the district court's instructions simply buttresses our conclusion. The jury was instructed in detail as to the necessity of finding the elements of product defect, causation and injury.[2] While some of these instructions were also given in the context of the negligence charge, on which the jury made negative findings, the necessary instructions were repeated in regard to the strict liability theory. References to proximate causation appear throughout the more than forty pages of transcript setting forth the court's oral charge to the jury.[3] The need to show

---

**1.** The first interrogatory was addressed to Chang's claim only. The second was addressed to both plaintiffs' claims.

**2.** The court instructed the jury that:

On plaintiffs' strict product liability claim, plaintiff has the burden of proving each of the following propositions. First, that each particular defendant manufactured or supplied a product which was defective at the time the product left the defendant's control.

Second, that the defendant was injured by defendant's product. And, third, that the defec-

tive condition of that product was the proximate cause of the plaintiffs' injury.

The district court then went on at length to explain the law controlling the jury's finding of whether the products were defective.

**3.** The district judge delivered the following instructions on the plaintiffs' strict liability products theory:

The proximate cause of an injury is that cause which is direct, unbroken—which in direct, unbroken sequence produced the injury, and without which the injury would not have occurred. The law does not require that

injury was also made clear.[4] The jury was later supplied a transcript of the court's instructions. The instructions, as a whole, made clear to the jury its responsibilities for finding all the elements of plaintiffs' causes of action. *See Kisor v. Johns–Manville*, 783 F.2d 1337, 1340 (9th Cir.1986) (reviewing adequacy of jury instructions to ensure that jury fully understood the issues); *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1337 (9th Cir.1985) (stating that jury instruction errors in civil trials are not grounds for reversal unless errors more probably than not influenced verdict). We find no error.

## DISCOVERY OF CLAIM INSTRUCTION

Raymark next challenges the jury instructions with regard to plaintiff Chang's discovery of his claim for asbestos injuries. The charge at issue stated:

In Mr. Chang's case you will be asked to decide when he discovered or should have discovered his claim for an—for an asbestos-related injury. A plaintiff discovers he has a claim for asbestos injuries at the time his doctors give him an informed diagnosis. An informed diagnosis means that the doctor must explain to him that he is suffering a disease caused by asbestos which will cause him pain and disability. Thus, a doctor must inform him of his illness to the degree he is capable of understanding in order to find a plaintiff has discovered his claim.

Raymark contends that this instruction misstates Hawaii law. Raymark takes particular exception to the instruction's apparent requirement that the plaintiff be given an "informed diagnosis" before he can be considered to have discovered his claim. The parties dispute whether Hawaii has imported such a rule by following California limitations law in some other respects, *see Jacoby v. Kaiser Foundation Hospital*, 1 Haw.App. 519, 622 P.2d 613 (Ct.App. 1981), and also dispute whether California itself requires an informed diagnosis. *Velasquez v. Fibrebroad Paper Products Corp.*, 97 Cal.App.3d 881, 889, 159 Cal. Rptr. 113, 118 (Ct.App.1979) (plaintiff in asbestosis case does not discover his claim for personal injury upon simple diagnosis without "[a] brief explanation of findings and prognosis by the examining physician.") As plaintiffs point out, however, all of this dispute is quite beside the point.

The instruction of which Raymark complains was not the district court's entire limitations instruction. Immediately after stating to the jury that a plaintiff discovers he has a claim for asbestos injuries when the doctors give him an informed diagnosis, the court went on to say:

However, a plaintiff must be diligent in discovering the cause of illness. Thus, you are instructed that even before an informed medical diagnosis is made, a plaintiff should have discovered his claim on the date he should have discovered through reasonable diligence first that he was ill, and second, that the defendants have been negligent or manufactured defective products and, third, that his illness was caused by the defendant's negligence or manufacture of defective products. The plaintiff should have discovered all three of the elements.

You may find that Mr. Chang learned or should have learned of each of these three elements at different times.

The jury apparently requested and received a transcript of the court's oral instruction a

---

there be only one proximate cause of an injury consisting of only one factor or thing or the conduct of only one person.

On the contrary, many factors or things, or the conduct of more than one person may operate either independently or together to cause injury. In such a case, each may be a proximate cause of the injury, if it is a substantial factor in bringing about the injury. Before you may base a finding of liability on the part of the defendants on a lack of such a [product] warning, you must find by preponderance of the evidence that a failure to warn

was a proximate cause of the plaintiffs' condition.

The court also instructed the jury for three and a half transcript pages as to intervening and superseding causes.

4. The court also directed the jury "that if you find that either plaintiff does not have any asbestosis-related disease, you are to return a verdict in favor of all defendants with respect to that plaintiff." The extent of injury was also discussed in instructions on damages.

few days later. The Chang special verdict form simply asked:

> On what date was Hoo Kin Chang informed or on what date should he have known that he was suffering from an asbestos-related disease and that this disease was the result of the Defendants' negligence or Defendants' defective products?

_____

(month)(day)(year)

Taken as a whole the court's instructions and the interrogatory submitted to the jury are in accord with this court's analysis of Hawaii law as described in _Carvalho_, 794 F.2d at 456:

> A cause of action accrues under Hawaii law when the plaintiff knows or through the exercise of reasonable diligence should know, of his injury, the defendant's negligence (or violation of a duty), and the causal connection between the two.

The district court did not deviate from Hawaii tort limitations law, as it has been understood in this Circuit.

## AWARD OF PREJUDGMENT INTEREST

■ Defendants' argument that the district court erred in awarding prejudgment interest is equally spurious. The plain language of the statute vests the trial judge with broad discretion to award interest in conformity "with the circumstances of each case." [5] Contrary to defendants' arguments, the clear weight of authority establishes that an award of interest is compensatory in nature and therefore appropriate, where as here, the plaintiff must wait a substantial period between the time of injury and compensation. _Lucas v. Liggett & Myers Tobacco Co._, 51 Haw. 346, 348–49, 461 P.2d 140, 143 (1969); _Jenkins v. Whittaker Corp._, 785 F.2d 720, 738 (9th Cir.), _cert. denied_, —— U.S. ——, 107 S.Ct. 324,

93 L.Ed.2d 296 (1986); _McKeague v. Talbert_, 3 Haw.App. 646, 658 P.2d 898, 909–10 (1983). An award of prejudgment interest to compensate for inherent delays in mass tort litigation is appropriate under Hawaii law. _In re Pago Pago Aircrash of Jan. 30, 1974_, 525 F.Supp. 1007, 1020–21 (C.D.Cal.1981). The district court's interpretation of the statute is therefore well supported. _See also, Wiegand v. Colbert_, 718 P.2d 1080 (Haw.1986).

Appellants also take issue with the award as an "undeserved windfall" for the plaintiffs because of the court's "erroneous" conclusion that Raymark's settlement offer was "no more than 'nuisance value.'" In light of the substantial money judgments for Chun and Chang, it is hard to take seriously defendants' contention that Raymark's offer of $3,100 and Owens Illinois' offer of $500 each to settle the cases were based on anything other than nuisance valuation. Raymark takes issue with this figure derived from its overall offer to settle 141 cases, but fails to provide any other basis for valuation of its settlement offer. Indeed, Raymark's offer was reduced from $3,100 in 1982, to $2,000 in 1984. The court was well within its discretion in awarding interest.

■ Raymark further challenges the date set by the district court for commencement of interest accrual. The district court determined that, in light of the nature of the plaintiff's injuries, interest should commence as of the date that the complaints were filed. Because the purpose of prejudgment interest is compensatory, and because the statute permits it, the district court could have awarded interest from the date of the injury itself. Raymark complains that the jury found that plaintiff Chang did not know he had a claim (for limitations purposes) until four months after he filed his action. Any anomaly inherent in the jury's findings on when Chang discovered in his claim are irrelevant to this

_____

5. Section 636–16 of the Hawaii Rev.Stat. 1 provides as follows:

> Awarding interest. In awarding interest in civil cases, the judge is authorized to designate the commencement date to conform with the circumstances of each case, provided that the earliest commencement date in cases arising in tort[ ] may be the date when the injury first occurred....

issue. Appellants' challenge to the pre-judgment award is wholly without merit.

## CONCLUSION

The special interrogatories and the instructions as a whole made clear to the jury the need to find all the elements of the plaintiffs' causes of action in order to award damages. The instructions also properly stated when Chang's cause of action could be found to have accrued. The award of prejudgment interest was entirely appropriate. Because we find the appeal of these issues to have been frivolous, we award five thousand dollars ($5,000) in attorneys' fees to plaintiffs-appellees. Fed. R.App.P. 38.

AFFIRMED.