972 F.2d 1343
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Alan TRUJILLO, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.
 No. 91-15666.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 13, 1992.
Decided July 28, 1992.
 
 Before GOODWIN, FLETCHER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 State Farm Mutual Automobile Insurance Company (State Farm) appeals a judgment on a jury verdict in this diversity action for bad faith failure to settle a claim within the policy limits. We affirm.
 
 
 3
 In November 1987 Daniel Thomas's car collided with a motorcycle ridden by Alan Trujillo. Trujillo was severely injured and sued Thomas in state court. Lengthy, and ultimately unsuccessful, settlement negotiations ensued. Trujillo eventually won a $1,720,829.89 judgment following a bench trial. Thomas died shortly after trial, and his widow assigned Trujillo all her rights arising out of the insurance contract with State Farm in exchange for Trujillo's promise not to execute the state court judgment against her personal assets.
 
 
 4
 Trujillo then sued State Farm in state court alleging that State Farm had breached its duty of good faith and fair dealing to the Thomases by refusing to settle Trujillo's bodily injury claim within the policy limits of $25,000 and thereby exposing the Thomases to massive liability. State Farm removed the case to federal district court on diversity grounds. The case was tried to a jury in March 1991, and Trujillo won a judgment in the amount of $1,720,829.89 plus interest and costs. State Farm timely appeals.
 
 
 5
 This case, as is typical of such cases, is essentially factual. Arizona law allows a tort victim plaintiff, following a verdict for damages in excess of the tortfeasor's insurance coverage, to enter into a covenant with the defendant not to execute upon the judgment in exchange for the defendant's assignment of his or her rights against the liability insurance carrier. This assignment transfers from the insured to the victim the right to sue the insurer for damages for wrongful failure to settle the case within the policy limits. See, e.g., Clearwater v. State Farm Mut. Auto. Ins. Co., 164 Ariz. 256, 792 P.2d 719 (Ariz.1990).
 
 
 6
 In this action by the assignee, the jury determined that bureaucratic bungling by the insurer reached the level of tortious "bad faith" necessary to erase, for all practical purposes, the policy limits. The economic incentives for choosing the correct litigation and settlement strategy in these cases have created an art form in which highly skilled specialists on both sides play for substantial sums. It is accordingly somewhat unusual when an insurer fails to settle a high exposure "bad injuries" case within the relatively low limits of an automobile liability insurance policy. Here the plaintiff, armed with evidence of mismanagement by the insurer's claims department, proved to the jury that the company did not carefully consider the interests of its insured, but instead took unreasonable chances in haggling over nickels and dimes under a $25,000 policy. The jury then awarded the accident victim--the assignee of the insured--essentially the same award for "failure to settle" that the original trial jury awarded for injuries in the tort case.
 
 A. Motion for Directed Verdict and JNOV
 
 7
 In diversity cases, we apply federal procedural law in reviewing a grant or denial of a motion for directed verdict. Miller v. Republic Nat'l Life Ins. Co., 789 F.2d 1336, 1340 (9th Cir.1986). We must determine whether, viewing the evidence in the light most favorable to the nonmoving party, and drawing all reasonable inferences therefrom, "the evidence permits only one reasonable conclusion as to the verdict." Peterson v. Kennedy, 771 F.2d 1244, 1256 (9th Cir.1985), cert. denied, 475 U.S. 1122 (1986); accord Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 181 (9th Cir.1989) (review of JNOV), cert. denied, 493 U.S. 1058 (1990).
 
 1. Settlement
 
 8
 State Farm's principal defense was that it in fact had settled the case and had met the demands of the plaintiff. On appeal, State Farm argues that the district court erred in denying its motions for a directed verdict and for JNOV on these grounds.
 
 
 9
 The district court did not err. There was abundant evidence that State Farm and Trujillo in fact had not reached a settlement agreement. The evidence indicates that during the course of settlement negotiations State Farm repeatedly failed to tender checks in the correct amount or payable to the proper parties and failed effectively to accept or respond to settlement offers by Trujillo.
 
 
 10
 State Farm's central contention is that it accepted Trujillo's offer to settle his bodily injury claim on December 8, 1987. State Farm's claims adjuster, Robert Garcia, testified that on December 7, 1987, he received a letter from Trujillo's lawyer, Thomas Cotter, which stated: "consider this my client's demand for policy limits." According to Garcia, he accepted this offer during a telephone conversation with Cotter the next day. On December 15, Garcia sent Cotter a written confirmation along with a general release form that would have surrendered both Trujillo's bodily injury and property damage claims. Prior to December 7, however, the settlement negotiations had concerned only Trujillo's bodily injury claim; the property damage claim for Trujillo's totaled motorcycle had not yet been negotiated.
 
 
 11
 In view of this divergence, we cannot say that as a matter of law a valid contract was formed. A reasonable jury might construe the apparent discrepancies among Cotter's December 7 offer, Garcia's December 8 oral acceptance, and Garcia's December 15 written confirmation as evidence of mutual mistake, a rejection and counteroffer, or an acceptance followed by anticipatory breach. See Hill-Shafer Partnership v. Chilson Family Trust, 165 Ariz. 469, 799 P.2d 810, 814 (Ariz.1990) ("[B]efore a binding contract is formed, the parties must mutually consent to all material terms."); Restatement (Second) of Contracts § 59 (1981) ("mirror image" rule); United Cal. Bank v. Prudential Ins. Co., 140 Ariz. 238, 681 P.2d 390, 429 (Ariz.Ct.App.1983) ("The insistence by one party upon terms not contained in a contract constitutes an anticipatory repudiation."). The district court correctly held that the facts were for the jury to decide.
 
 2. Good faith
 
 12
 State Farm also contends that even if no binding settlement agreement was reached, its settlement efforts demonstrate its lack of bad faith as a matter of law. The Arizona Supreme Court has articulated an eight-factor test to be applied in the context of third party bad faith claims. See Clearwater v. State Farm Mut. Auto. Ins. Co., 164 Ariz. 256, 792 P.2d 719, 722 (Ariz.1990). Under this approach, a showing of bad faith does not require proof of fraud, deceit, or conscious wrongdoing. All the assignee of the insured need prove is that the insurer failed to give "equal consideration to the interests of its insureds as it gives to its own interests." Id. at 721; see also id. at 723 (noting that the test for determining whether an insurer has given equal consideration to the interests of the insured is "whether a prudent insurer without policy limits would have accepted the settlement offer"). There was evidence at trial that Garcia failed to investigate the extent of the Thomases' excess liability and did not keep them informed of their potential exposure. There also was evidence that Garcia negotiated tenaciously over Trujillo's property damage claim in an attempt to save State Farm a few hundred dollars when he knew that Trujillo strongly opposed piecemeal settlement and that the protracted haggling over the motorcycle was holding up settlement of Trujillo's bodily injury claim. A jury reasonably could have viewed State Farm's sluggish and bumbling settlement efforts as a failure to give "equal consideration" to the Thomases' interests.
 
 B. Motion for New Trial
 
 13
 State Farm makes four arguments that the district court erred in denying its new trial motion. We review a denial of a motion for a new trial for an abuse of discretion. Hard v. Burlington Northern R.R., 812 F.2d 482, 483 (9th Cir.1987).
 
 
 14
 First, State Farm argues that a new trial was required because the verdict was against the great weight of the evidence. As discussed above, however, there was ample evidence to support the jury's finding of bad faith. Second, State Farm contends that the district court's jury instructions regarding bad faith were inadequate. The instructions, however, were taken word for word from the Arizona Supreme Court's most recent and authoritative pronouncement on third party bad faith claims. See Clearwater, 792 P.2d at 721-23. We find no error.
 
 
 15
 Third, State Farm claims that the introduction of Exhibit 37, a copy of a 1972 article criticizing State Farm's alleged policy of allowing excessive insurance claims against its insureds, was highly prejudicial and can be cured only by a new trial. We review evidentiary rulings for an abuse of discretion and will not reverse unless there is prejudice. Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1989). We find no prejudice here. Trujillo presented ample evidence to support a finding of bad faith. The jury deliberated only one hour and did not examine any exhibits. Any error was harmless.
 
 
 16
 Fourth, State Farm maintains that the district court erred in granting Trujillo's motion to strike State Farm's affirmative defense of settlement. We review this issue for an abuse of discretion. FSLIC v. Gemini Management, 921 F.2d 241, 244 (9th Cir.1990). Under Fed.R.Civ.P. 12(f), the court may strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." State Farm's affirmative defense was arguably insufficient and redundant. The district court struck the defense on the ground that State Farm, as an indemnitor, was estopped from disputing the existence of the Thomases' liability to Trujillo. The district court did allow State Farm to amend its answer to allege the substance of its settlement defense, and it permitted State Farm to put on all its evidence that it believed it had settled Trujillo's bodily injury claim. State Farm has failed to demonstrate prejudice. Any error was harmless.
 
 
 17
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3