**Kathleen Q. TRINH and Duane Xuan Trinh, Plaintiffs,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**No. C 94–20663 EAI.**

United States District Court, N.D. California.

Aug. 14, 1995.

---

Alfred S. Wright, San Jose, CA, for plaintiffs.

Peter E. Davis, San Ramon, CA, for defendant.

ORDER DENYING WITHOUT PREJU-
DICE DEFENDANT MET LIFE'S
MOTION FOR SUMMARY JUDG-
MENT

INFANTE, United States Magistrate
Judge.*

## I. *Introduction and Background*

Plaintiffs Kathleen Q. Trinh and Duane Xuan Trinh ("plaintiffs"), who are brother and sister, filed this breach of contract action in state court as third-party beneficiaries of their mother's life insurance policy with defendant Metropolitan Life Insurance Company ("Met Life"). Met Life noticed removal of the action to federal court in San Jose and now moves for summary judgment contending that the insurance policy was void due to material misrepresentations made by the insured in her application.[1] For the reasons set forth below, Met Life's motion is DENIED.

## II. *Undisputed Facts*

### A. *The Life Insurance Application*

On or about June 19, 1991, Mrs. Minh Ngoc Thi Luu ("Ngoc Luu"), a 56–year–old, Vietnamese-born San Jose resident, applied for a $150,000 life insurance policy with Met Life. Listed as beneficiaries on the application were the two plaintiffs. Ngoc Luu was asked whether or not she:

> "Ever received treatment, attention, or advice from any physician, practitioner, or health facility for, or been told by any physician, practitioner, or health facility that such person had heart trouble, chest pain, high blood pressure, diabetes, lung disease, tumor, or cancer?

> "Ever had any surgical operation not revealed in previous questions or gone to a hospital, clinic, dispensary, or sanitarium for observation, examination or treatment no revealed in previous questions?"[2]

In response to both questions, Ngoc Luu checked "no."[3] Also as part of the application process Ngoc Luu's attending physician was required to submit a statement about her health. That statement does not men-

---

* The matter is before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 by explicit written consent of the parties. *See* respective consent forms, each dated August 4, 1995.

1. Federal subject matter jurisdiction is predicated on the purported diversity of citizenship of the adverse parties. Plaintiffs are California residents, whereas Met Life, by its account, is a New York corporation having its principal place of business in that state. Notice of Removal, filed September 23, 1994, at ¶ 2. Plaintiffs allege in their Amended Complaint, filed in Santa Clara County Superior Court on August 24, 1994, that Met Life is a California corporation. *Id.*, Exhibit B (copy of Amended Complaint, at ¶ 1). Met Life, however, plausibly denies the allegation, Answer, filed September 23, 1994, at ¶ 1, and plaintiffs have not contested the removal of the action to federal court or the existence of federal jurisdiction.

2. Declaration of Met Life underwriter Barbara Jones ("Jones Decl.") Exhibit A (copy of Ngoc Luu's life insurance application, at questions 11(b) and (e)).

3. Declaration of Met Life claims consultant Tom Shertzer ("Shertzer Decl."), Exhibit B (copy of Ngoc Luu's insurance policy).

tion any health problems which Ngoc Luu suffered, nor does it indicate that she had been recently hospitalized.[4] Finally, Ngoc Luu underwent an independent medical examination. During the examination Ngoc Luu was again asked whether or not she had ever received treatment, attention, or advice about a tumor or polyp and whether or not she had been to a hospital or had surgery for any reason not previously listed. Again, she answered "no" to both questions.[5]

On or about July 12, 1991, Met Life issued to Ngoc Luu a one-year life insurance policy in the amount of $150,000.[6] The policy was renewable and had monthly premiums of $43.00. Benefits were to be paid to the insured's beneficiaries if she were to die during the initial term or a renewal term of the policy. In addition, the policy contained a clause providing that Met Life would "not contest the validity of [the insured's] policy after it has been in force during the insured's lifetime for 2 years from the date of policy, except for nonpayment of premiums."[7]

## B. Ngoc Luu's Medical History

Following Ngoc Luu's death in January 1993, within 2 years of the date the policy was first issued,[8] Met Life investigated her medical history. Records obtained from various medical providers showed that, on March 19, 1991, contrary to the information given on the application, Ngoc Luu had had a CT scan performed at the San Jose Medical Center. The results of the scan indicated that she had a meningioma on her brain.[9] It is not clear whether she was informed of the results of the test or her long-term prognosis.

4. *See* Jones Decl., ¶ 6 and Exhibit B (copy of Ngoc Luu's physician's statement).

5. Jones Decl., ¶¶ 8–9; Shertzer Decl., Exhibit "B" (copy of Ngoc Luu's insurance policy).

6. Shertzer Decl., Exhibit "B" (copy of Ngoc Luu's insurance policy).

7. *Id.*, p. 8.

8. Apparently, an investigation was routinely conducted if a policy holder died before the policy became uncontestable. *See* Shertzer Decl., ¶ 6.

Less than three months later, on June 4, again contrary to the information provided on the insurance application, Ngoc Luu was admitted to the Santa Clara Valley Medical Center "with a severe progressive headache, memory loss, difficulty walking, right upper and lower extremity weakness, and right-sided numbness and paresthesias."[10] After undergoing a CT scan and a MRI, she was diagnosed with a "large left-sided convexity meningioma."[11] She was discharged on June 12, but was readmitted on June 23 in order to undergo neurosurgery to remove the brain tumor.[12] The application for life insurance was made approximately one week after her discharge from the hospital, and only three days before she went in for surgery.

## C. The Lawsuit

Ngoc Luu died of "cardio-respiratory arrest due to respiratory failure due to brain tumor."[13] Approximately a month later, plaintiffs, as beneficiaries of the life insurance policy, notified Met Life of the death of their mother. Met Life refused to pay the plaintiffs the $150,000 due under the terms of their mother's policy. Plaintiffs thereafter filed this suit to recover the insurance proceeds plus interest.

## III. Summary Judgment Standard

Summary judgment shall be entered in favor of the moving party when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". Fed.R.Civ.P. 56(c). The moving party initially bears the burden of

9. *Id.*, ¶ 7 and Exhibit "C" (copy of physician's report on results of March 19, 1991 brain scan).

10. *Id.*, ¶ 8 and Exhibit "D" (copy of discharge summary from the hospitalization).

11. *Id.*

12. Shertzer Decl., ¶ 9.

13. *Id.*, ¶ 3 and Exhibit "A" (copy of Ngoc Luu's death certificate).

showing the non-existence of a material factual dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Rule 56(e)). To carry this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A dispute about a material fact is genuine if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ For the purposes of summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in his favor. *Id.,* 477 U.S. at 255, 106 S.Ct. at 2513–14; see also, *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104 (9th Cir.1991). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, no those of a judge [when] he is ruling on a motion for summary judgment." *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

## IV. *Discussion*

■ Material misrepresentations on an insurance application are grounds for the insurance company to rescind the policy. *Imperial Casualty & Indemnity Co. v. Sogomonian,* 198 Cal.App.3d 169, 179, 243 Cal. Rptr. 639 (1988), quoting *Thompson v. Occidental Life Ins. Co.,* 9 Cal.3d 904, 916, 109 Cal.Rptr. 473, 513 P.2d 353 (1973); *Life Ins. Co. of North America v. Capps,* 660 F.2d 392, 394 (9th Cir.1981) (interpreting California law) ("The general rule is that misrepresentation justifies rescission."). This is true whether or not the misrepresentations are intentional or unintentional. *See* Cal.Ins. Code § 331. Since "an insurer has a right to know all that the applicant for insurance knows regarding the state of his health and medical history", *Sogomonian, supra,* 198

Cal.App.3d at 179, 243 Cal.Rptr. 639 (internal quotations omitted), a lack of truthfulness by the applicant allows the insurance company to void the contract. See, e.g., *Wilson v. Western Nat. Life Ins. Co.,* 235 Cal.App.3d 981, 993, 1 Cal.Rptr.2d 157, 164 (1991); *Taylor v. Sentry Life Ins. Co.,* 729 F.2d 652, 655 (9th Cir.1984) (applying California law).

■ A review of the cases establishes that there are three factors involved in determining whether an insurance company has the right to rescind a policy. They are: (1) that the applicant made a misrepresentation; (2) that the misrepresentation was material; and (3) that the applicant knew that she made a material misrepresentation.

### 1. *Misrepresentations by the applicant*

The answers provided by Ngoc Luu on her application obviously misrepresented her medical condition at the time she completed the application. Plaintiffs' counsel admitted at the hearing on the motion that the information on the application is incorrect.

### 2. *Materiality of the misrepresentations*

■ "The materiality of a representation is a question of law." *Merced Mut. Fire Ins. Co. v. State,* 233 Cal.App.3d 765, 772, 284 Cal.Rptr. 680, 684 (1991). There are two different methods used by the courts to determine if the misrepresentation is a material one. Under the first test, "[m]ateriality is determined by the probable and reasonable effect that truthful disclosure would have had upon the insurer in determining the advantages of the proposed contract." *Old Line Life Ins. Co. of America v. Superior Court,* 229 Cal.App.3d 1600, 1605, 281 Cal.Rptr. 15, 18 (1991), quoting *Holz Rubber Co., Inc. v. American Star Ins. Co.,* 14 Cal.3d 45, 61, 120 Cal.Rptr. 415, 533 P.2d 1055 (1975) (citations omitted); see also, *Taylor, supra,* 729 F.2d at 655 ("The test is the effect which truthful answers would have had upon the insurer."); Cal.Ins.Code § 334. Thus, if the insurer would not have issued the policy but for the misrepresentations, the misrepresentations are considered material. Under the second test "[t]he fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually suffi-

cient to establish materiality as a matter of law." *Merced, supra,* 284 Cal.Rptr. at 684; *Taylor, supra,* 729 F.2d at 654 ("That the insurer puts questions in writing and asks for written answers has itself been deemed proof of materiality.").

■ Here, regardless of which test for materiality is applied and as plaintiffs' counsel acknowledged at the hearing on the motion, Ngoc Luu's misrepresentations on the insurance application form are material. Both declarants on behalf of Met Life attest that Ngoc Luu would never have been issued a policy had the facts of her tumor, hospitalization, and surgery been made available to Met Life.[14]

Given the undisputed evidence presented, this Court concludes that, as a matter of law, the misrepresentations made by Ngoc Luu on her application were material.

### 3. *The applicant's knowledge*

■ The third and final test to determine if an insurance company can rescind the contract is whether the applicant had knowledge of the material misrepresentation:

> if the applicant for insurance had no present knowledge of the facts sought, or failed to appreciate the significance of information related to him, his incorrect or incomplete responses would not constitute grounds for rescission.

*Thompson, supra,* 109 Cal.Rptr. at 480; *see also, Miller v. Republic Nat. Life Ins. Co.,* 789 F.2d 1336, 1339 (9th Cir.1986) ("First, there is no breach of the duty to disclose if the applicant is ignorant of the relevant information. [Citations] Second, there is no breach of the duty to disclose if the applicant, acting in good faith does not understand the significance of the information he fails to

disclose."); *Capps, supra,* 660 F.2d at 394 ("[A]n applicant for life insurance is not faulted for failing to disclose a material fact when, because he or she fails to appreciate the significance of certain information, the *existence* of a condition queried on the application is not known.") (emphasis in original).

Both plaintiffs declare, verbatim: "My mother spoke almost no English as she was born in Vietnam and moved to the United States late in life." [15] They argue, therefore, that she may have been unable to understand the questions asked on the application,[16] and/or unable to read the application before she signed it. Therefore, plaintiffs argue, the insurance company is not entitled to rescind the insurance contract.[17]

■ There is "a duty on the part of the insured to read the contract and the application in accordance with her representations and to report to the company any misrepresentations or omissions … By neglecting to inform the company of the material omissions, the insured became responsible for such misrepresentations or omissions." *Telford v. New York Life Ins. Co.,* 9 Cal.2d 103, 107, 69 P.2d 835 (1937). However, according to the California Supreme Court, an illiterate applicant cannot be charged with failing to read the insurance application or agreement. *Telford, supra,* 9 Cal.2d at 108, 69 P.2d 835; *e.g., Weiss v. Policy Holders Life Ins. Ass'n,* 132 Cal.App. 532, 538, 23 P.2d 38 (1933) (illiteracy of the insured excused her failure to read the application). An applicant non-fluent with the English language is obviously functionally illiterate and, as such, the same rule should apply. *See, Weiss, supra,* 132 Cal.App. at 538, 23 P.2d 38 ("the rule does not compel the insured to do something which he cannot do").[18]

**14.** *See* Shertzer Decl., ¶ 10; Jones Decl., ¶¶ 10–11.

**15.** D. Trinh Decl., ¶ 2; Declaration of Kathleen Trinh ["K. Trinh Decl."], ¶ 2.

**16.** Plaintiff's Brief, p. 2.

**17.** Plaintiffs also contend that the application responses were prepared by the insurance agent, who may have mis-stated the applicant's actual answers. The Court's unexpert review of the responses compared with the signatures of the applicant and the agent on the same document

suggests that the agent did prepare the form, although there is no evidence whatsoever that the responses do not reflect the applicant's intentions.

**18.** The California authorities appear inconsistent with the majority rule, *see* 16C Appleman, *Insurance Law and Practice,* § 9143 (1981) ("If the insured is unable to read a policy … or to understand it, it is his duty to have someone else read it to him, or to explain its terms to him"), albeit the only pointed decisions this Court was able to unearth—both in California and other

■ Plaintiffs lack personal knowledge whether their mother read the application and policy, with or without benefit of an interpreter. Both plaintiffs admit that they never discussed the policy with their mother.[19] Duane Trinh further acknowledges that he never spoke with a Met Life agent, nor did he accompany his mother to any medical evaluations.[20] Apparently, neither plaintiff was in attendance when the policy was signed. However, plaintiffs' contention that their mother lacked understanding of what she was signing is more than mere surmise because plaintiffs attest to personal knowledge of their mother's inability to speak the English language. Unless their mother was assisted by an interpreter (whether the insurance agent or a third party) at the time she completed the insurance application she could not possibly have understood the documents placed before her. Thus, a rebuttable inference is created that the insured could not, and did not, read her insurance application or policy.

■ Met Life does not dispute for purposes of the motion that Ngoc Luu was illiterate in the English language but asserts, *without evidence,* that "the insurance agent was Vietnamese" and that "[t]he fact that both the insured and the ... agent were Vietnamese suggest that there was no barrier to effective communication between them".[21] Certainly, the insurance application indicates that it was witnessed by Met Life's "licensed resident agent", one Tri Huu Nguyen,[22] an individual whose name appears to be of Vietnamese derivation. The agent provides certification with the application that, "Each question was asked of the persons to be insured and answered as recorded." [23] However, a Vietnamese name does not establish Vietnamese ancestry or proficiency in the Vietnamese tongue. Notably absent on the motion is a declaration from the agent regarding whether the agent attempted to translate the documents to her and whether the agent was fluent in both Vietnamese and English.[24] Obtaining such a declaration would seemingly be a simple matter, and Met Life has not explained why it cannot do so.[25]

## V. *Order*

Accordingly, because there are genuine issues of disputed material fact concerning

jurisdictions—were decided several decades ago. *E.g., Mills v. Reserve Life Ins. Co.,* 335 S.W.2d 955, 957–58 (Ky.App.1960) (applying Kentucky law) ("If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents.") (citations omitted); *DeFord v. Nat'l Life & Acc. Ins. Co.,* 182 Tenn. 255, 185 S.W.2d 617, 621 (1945) (applying Tennessee law). However, "[t]he lex loci contractus governs as to all matters bearing on the execution, interpretation, and validity of the contract, *including the capacity of the parties to contract".* 12 Appleman, *supra,* § 7079 (emphasis added); see, *Robert McMullan & Son v. U.S. Fidelity & Guaranty Co.,* 103 Cal. App.3d 198, 162 Cal.Rptr. 720, 723, 162 Cal. Rptr. 720 (1980), quoting *Dixon Mobile Homes, Inc. v. Walters,* 48 Cal.App.3d 964, 122 Cal.Rptr. 202, 207–208 n. 4 (1975) (listing relevant factors for "governmental interest approach" to choice of law in contract issues, including the place of contracting, place of negotiation, place of performance, location of the subject matter of the contract, and the residence and place of incorporation and business of the parties). "Thus, [for example], a fire policy executed on California property by an agent of [a] New York company, issued in California, was governed by the law of

that state". 12 Appleman, *supra,* § 7081, citing *Continental Ins. Co. v. Dunne,* 226 F.2d 471 (9th Cir.1955). This Court therefore defers to the California Supreme Court's 1937 pronouncement in *Telford, supra,* which that court has apparently never repudiated.

19. K. Trinh Decl., ¶ 3; D. Trinh Decl., ¶ 3.

20. D. Trinh Decl., ¶¶ 4–5.

21. Met Life's Reply Brief, at p. 3.

22. Johns Decl., Exhibit B (copy of insurance application).

23. *Id.*

24. The agent would have had to have been fluent in both languages because he would have needed to interpret for the policy-holder from the written documents.

25. At the hearing on the motion, Met Life's attorney represented that the insurance agent no longer works for Met Life. Although this may make it more difficult to obtain the former agent's recollections, there is no basis on the record before the Court for concluding that he cannot be subpoenaed for deposition and/or trial testimony.

whether the insured was able to read the insurance application and policy, IT IS HEREBY ORDERED that Met Life's motion for summary judgment is DENIED WITHOUT PREJUDICE.[26]

SO ORDERED.

26. Any renewed motion should be accompanied by the declaration and/or excerpts of deposition testimony from Tri Huu Nguyen, the former insurance agent who sold Ngoc Luu her policy. Nguyen's testimony should be directed to the questions whether he was able to, and did, interpret the documents for her and whether he also assisted her in completing the application.