**Patrick Carson CASEY and Allison Casey, a Minor, By and Through Her Guardian Ad Litem, Toni CASEY, Plaintiffs,**

**v.**

**OLD LINE LIFE INSURANCE COMPANY OF AMERICA, a Wisconsin corporation, Defendant.**

**OLD LINE LIFE INSURANCE COMPANY OF AMERICA, Defendant and Third–Party Plaintiff**

**v.**

**Norry Beth CARREL Third–Party Defendant.**

**No. C96–20722 EAI.**

United States District Court,
N.D. California,
San Jose Division.

Jan. 16, 1998.

Randall E. Willoughby, Laura Geist, Willoughby Stuart & Bening, San Jose, CA, for Allison Casey, Toni Casey.

Adrienne C. Publicover, Bowles & Verna, Robert D. Phillips, Jr., Fleming & Phillips, Walnut Creek, CA, for Old Line Life Insurance Company of America.

David W. Johnson, Palo Alto, CA, for Norry Beth Carrel.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

INFANTE, United States Magistrate Judge.

### I. INTRODUCTION

Defendant and Third Party Plaintiff Old Line Life Insurance Company ("Old Line")

moves, pursuant to Rule 56, F.R.Civ.P., for summary judgment on Plaintiffs Patrick Casey and Allison Caseys' complaint for breach of insurance contract and breach of the implied covenant of good faith and fair dealing. Alternatively, Defendant seeks summary adjudication of the following issues: (1) Old Line Life was entitled to rescind the policy of life insurance issued to John Casey; (2) Plaintiffs' first claim for relief for breach of contract must fail as a matter of law; (3) Plaintiffs' second claim for breach of the covenant of good faith and fair dealing [bad faith] must fail as a matter of law; and (4) Plaintiffs' claim for punitive damages must fail as a matter of law.

For the reasons set forth below, Old Line's Motion for Summary Judgment as to all causes of action in Plaintiffs' complaint is GRANTED.

## II. BACKGROUND

The following facts are undisputed, except where otherwise noted.

On August 4, 1992, decedent John Casey completed Part A of a written application for $500,000 in life insurance coverage with Defendant Old Line Life Insurance Company ("Old Line"). Defendant's Undisputed Fact ("UF") 1. This Application consisted of Part A and one or more Parts B. UF 2. Previously, on May 21, 1992, John Casey had undergone a paramedical examination which was required by Old Line in connection with the insurance application. UF 6. During the paramedical examination, the medical examiner asked John Casey specific questions about his health. The medical examiner filled out the examination, entitled Answers to Medical Examiner (forming Part B of the Application), and John Casey signed the application, signifying that all information given in the application was correctly recorded, complete, and true. UF 7. In his answers to the medical examiner, Mr. Casey responded "No" to the following questions:

> 3.a. Have you received treatment or joined an organization for alcoholism or drug dependency or abuse; been advised to discontinue the use of alcohol or drugs?
>
> b. Have you used cocaine, barbituates, amphetamines or any other drug which might cause a dependency, other than as prescribed by a licensed physician?

UF 8.

On August 4, 1992, John Casey completed and signed an application for life insurance, Part A, which contained the following statement:

> This application consists of Part A and one or more Parts B. This application is not a contract of insurance. A contract of insurance shall take effect only if a policy is issued on this application and the first premium is paid in full (a) during the lifetime of all proposed insureds and (b) while there is no change in the insurability and health of all such persons from that stated in this application.... It is represented that all statements in this application are true, full and complete, and bind all parties in interest under any policy applied for.

Defendant's Exhibit A.

Charles Weidner, an underwriter employed by Line Life, reviewed the Application materials on or about August 14, 1992. UF 9. Mr. Weidner observed that Mr. Casey's blood test of May 21, 1992 revealed moderately elevated Serum Glutamic–Oxalacetic Transaminase ("SGOG") and Serum Glutamic–Pyruvic Transaminase ("SGPT") levels. UF 10. Mr. Weidner asserts that these levels raised the possibility of several medical anomalies, ranging from temporary illness to excessive alcohol consumption. Weidner Decl. ¶ 10.[1] Based upon these test

---

1. Plaintiffs object to this conclusion on the ground that Mr. Weidner is not a medical professional, and "therefore his qualifications to determine the possible medical anomalies that would arise from elevated SGOG and SGPT levels is uncertain at best." Plaintiff's Separate Statement of Disputed Facts in Opposition to Motion for Summary Judgment, No. 11. While Plaintiffs' contention that Mr. Weidner has not been qualified to render a medical opinion is well-taken, his declaration is relevant to his explanation for Old Line's decision to require John Casey to undergo a second blood chemistry test and urinalysis and its decision to make a counteroffer of a standard rating, rather than the preferred rating for which John Casey applied.

results, Old Line requested that Mr. Casey undergo a second blood chemistry test and urinalysis, which he did on August 31, 1992. UF 12, 13. Old Line also sought and obtained medical records from Mr. Casey's primary treating physician, Dr. Hudson. UF 14.

On August 31, 1992, Mr. Weidner reviewed an inspection report, on which Mr. Casey revealed that he was a total abstainer of alcohol. UF 15.[2] Mr. Weidner reviewed the Application, the medical records from Dr. Hudson, the second blood chemistry results and urinalysis, and all of the documentation in the underwriting file on or about September 9, 1992, and found no information relating to Mr. Casey's medical history that was significant for underwriting purposes. UF 16, 17. Mr. Weidner found that there was no evidence of any drug or alcohol use or abuse by Mr. Casey on his second blood test, nor was there any such evidence in the medical records from Mr. Hudson or on the Application. UF 18, 19. However, the prior moderate elevation of the SGOG and the SGPT levels on the first blood test caused Old Line to make a policy counteroffer of a "standard" rating, rather than the preferred rating for which Mr. Casey applied. UF 20.

On October 6, 1992, John Casey executed an Amendment of Application for Insurance, changing the policy from a PT–1 preferred non-tobacco rate, to a PT–1 standard non-tobacco rate. UF 21. Based upon the information provided by Mr. Casey, Old Line issued to John Casey its Policy No. 1870980, effective September 24, 1992. UF 22.

At the time the policy was issued, John Casey named as equal beneficiaries to the policy his daughter and son, Patrick Carson Casey and Allison Casey. UF 23. On January 27, 1994, John Casey executed a Request for Change of Beneficiary, changing the beneficiary designation of the Policy to "1/2 Norry Beth Carrel (intended spouse), 1/4 Patrick

Carson Casey, and 1/4 Allison Dana Casey." UF 24. John Casey died on June 27, 1994, and Old Line thereafter received claims for benefits under the Policy from all of the beneficiaries. UF 25.

Old Line conducted a contestable investigation, pursuant to the two year contestable provision. UF 26, 27. In the course of its investigation, Old Line obtained the following records which indicated that John Casey had a long history of alcohol abuse. Defendant obtained medical records from Stanford University Hospital, dated June 22, 1994, which stated "PT has a long hx of ETOH abuse beginning at age 15 yrs. He has been in ETOH rehab three times, the most recent was 1/94 at Ross in Marin." UF 29; Publicover Decl., Exh. A. Old Line also obtained John Casey's medical records from Ross Hospital, dated July 13, 1988, which stated, "The patient describes himself as an alcoholic but stopped drinking years ago." UF 30; Publicover Decl., Exh. B. Finally, Defendant sought medical records from Ross Hospital, to which decedent's family objected. Old Line did obtain a copy of a Discharge Summary from Ross Hospital, dated August 12, 1992, which stated that John Casey was admitted to Ross Hospital on June 4, 1992 and discharged on June 30, 1992, that his admitting diagnosis was alcohol dependency, reactive depression, benzodiazepine abuse, and insomnia secondary to alcohol dependency, and that his discharge diagnosis was alcohol dependency. The discharge summary also stated that John Casey was to attend 90 AA meetings in 90 days and participate in Ross Aftercare meetings and Alumni meetings once a week. Publicover Decl., exh. C.

Based upon these medical records and its conclusion that John Casey made material misrepresentations and concealments in his insurance application, Old Line rescinded the policy.[3] UF 36.

[2]. Plaintiffs contend that they are unable to dispute this UF as stated because "Plaintiffs have yet to take Mr. Weidner's deposition, and have no present information as to whether this statement is true." Plaintiff's Separate Statement of Disputed Facts in Opposition to Motion for Summary Judgment, No. 15. However, Plaintiffs did not seek a continuance of the hearing on the motion for summary judgment pursuant to Rule 56(f), F.R.Civ.P.

[3]. Plaintiffs dispute Defendant's conclusions that John Casey made material misrepresentations on his application.

Plaintiffs filed a complaint for breach of contract and breach of the implied covenant of good faith and fair dealing against Old Line in the Superior Court of Santa Clara County on July 17, 1996. Defendant Old Line timely removed this action to federal court on the basis of diversity jurisdiction. On September 11, 1996, Old Line filed a third party complaint against the remaining beneficiary, Norry Beth Carrel, seeking declaratory judgment that the policy is void by virtue of Mr. Casey's alleged misrepresentation and concealment of material facts in his insurance application and that Ms. Carrel is not entitled to any life insurance benefits under the Policy.

## III. SUMMARY JUDGMENT STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party will bear the burden of proof on an issue at trial, either because it is the plaintiff or, as a defendant, is asserting an affirmative defense, it must establish beyond controversy all of the essential elements of the claim or defense. *See Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). However, the moving party has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the court that there is an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Rule 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the materi-

al facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence ... will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Evidence that "is merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Id.* at 249–250, 106 S.Ct. at 2511.

Summary judgment cannot be granted where a genuine dispute exists as to any material fact. Rule 56(c), F.R.Civ.P. A "material" fact is one which might affect the outcome of the case under the applicable law. *Id.* at 248, 106 S.Ct. at 2510. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the non-moving party. *Id.* In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513. Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] he is ruling on a motion for summary judgment." *Id.*

## IV. DISCUSSION

A. *First Claim for Breach of Insurance Contract*

Defendant Old Line contends that it had the right to rescind the policy of insurance issued to John Casey based upon misrepresentations made by Casey in his application for life insurance. Old Line contends that John Casey had a duty to inform Old Line of his treatment at Ross Hospital for alcoholism and benzodiazepine abuse, which occurred two weeks after he completed Part B of the application. Old Line relies upon two provisions of the insurance application to support its contention that John Casey had a duty to inform Defendant of his treatment at Ross Hospital: (1) Part A's statement above Casey's signature, which states, "It is represented that all statements in this application

are true, full and complete, and bind all parties in interest under any policy applied for"; and (2) the "continued insurability" or "good health" provision of the same part, which states, "A contract of insurance shall take effect only if a policy is issued on this application and the first premium is paid in full (a) during the lifetime of all proposed insureds and (b) while there is no change in the insurability and health of all such persons from that stated in this application."

Plaintiffs contend that John Casey honestly responded to all questions in Part B of the application when he answered these questions on May 21, 1992. Plaintiffs point out that the application only asked John Casey whether he received treatment or joined an organization for alcoholism or drug dependency, and not whether he had a history of alcoholism. Plaintiffs contend that neither the Stanford University Hospital Records nor the Marin County Hospital Records disclose any such treatment prior to the date Part B was completed. Plaintiffs also assert that Part A of the application did not clearly request information concerning any changes or updates in the health of the insured, but simply sets forth the conditions for the contract of insurance to take effect. Plaintiffs assert that this application is ambiguous to the lay insured, and that Mr. Casey could have reasonably understood that he was simply reaffirming the answers given on his prior application as of the time they were made on May 21, 1992. Plaintiffs also assert that Mr. Casey may not have realized that any change in his health was "material," as a result of his stay at Ross Hospital, and that Casey's second blood test, which indicated no heath-related problems, was "an improvement of health relative to the prior blood test" and that "a reasonable person could fairly assume that the second blood test provided all the information needed by Old Line Life to answer its underwriting questions." Opposition to Motion for Summary Judgment, p. 17. Finally, Plaintiffs challenge Defendant's contention that the statement in the application was "material" and asserts

that the trier of fact is "not required to believe the 'post mortem' testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed."

■ Three factors are reviewed in determining whether an insurance company has the right to rescind a policy, which are: (1) that the applicant made a misrepresentation; (2) that the misrepresentation was material; and (3) that the applicant knew that he made a material misrepresentation. *Trinh v. Metropolitan Life Ins. Co.*, 894 F.Supp. 1368, 1372 (N.D.Cal.1995).

### 1. Misrepresentation by the applicant

■ "It is generally held that an insurer has a right to know all that the applicant for insurance knows regarding the state of his health. Material misrepresentation or concealment of such facts are grounds for rescission of the policy, and an actual intent to deceive need not be shown." *Thompson v. Occidental Life. Ins. Co.*, 9 Cal.3d 904, 915, 916, 109 Cal.Rptr. 473, 513 P.2d 353 (1973). However, the burden of proof is on the insurer to establish concealment or misrepresentation, which includes negating possible excuses or explanations offered by the plaintiffs for the misstatement or omissions in the insured's application. *Id.* at 919, 109 Cal. Rptr. 473, 513 P.2d 353.

■ In this case, there is not sufficient evidence to find, as a matter of law, that John Casey made any misrepresentations at the time he answered the questions set forth in Part B of the Application on May 21, 1992. Although the medical records from Stanford University Hospital and Ross Hospital indicate a history of alcoholism both before and after John Casey's paramedical exam, the records do not reveal that John Casey was treated or joined an organization for alcoholism or drug dependency prior to May 21, 1992. Therefore, no evidence before this court would establish that John Casey lied on his application on May 21, 1992.[4]

---

4. Defendant Old Line points out in a footnote that John Casey was a "self-recognized alcoholic even before he completed Part B, but that Casey failed to disclose this fact on the application."

However, neither Part A nor Part B inquired into the drinking habits of an applicant (other than treatment or membership in an organization), and Defendant cannot base its rescission of the

It is undisputed that John Casey entered Ross Hospital on June 4, 1992, approximately two weeks after he filled out Part B of the application, and received treatment for alcoholism and benzodiazepine abuse. It is also undisputed that he did not disclose this hospitalization or treatment to Old Line. If John Casey had a continuing duty to correct any material misstatements in Part B of his application for insurance, then failure to inform Old Line that he had received treatment for alcohol and drug dependency could constitute a misrepresentation on the insurance application.

■ The Ninth Circuit has set forth the applicable requirements of disclosure by an insured to an insurer under California law in *Miller v. Republic National Life Ins. Co.,* 789 F.2d 1336, 1339 (9th Cir.1986):

> Under Cal. Ins.Code § 330 (Deering 1976), "[n]eglect to communicate that which a party knows and ought to communicate, is concealment." Section 332 requires in pertinent part that "[e]ach party to a contract of insurance ... communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material." Sections 330 and 332 on their face, however, do not speak to the time period during which the duty to disclose exists. The court in *Security Life Insurance Co. v. Booms,* 31 Cal.App. 119, 122, 159 P. 1000, 1001 (1916), looked to the predecessor of section 356 to provide an answer. Section 356 states, as did its predecessor, that "[t]he completion of the contract of insurance is the time to which a representation must be presumed to refer." Accordingly, the Booms court held that the various representations in the application were to be considered to be representations as to the applicant's health *at the time the insurance contract was completed,* not merely at the time the application was filled out. Thus, in order to avoid making false representations at the time of completion, *the applicant had a duty to disclose any material changes* in her health that occurred between the time the

application was filled out and the time the contract was completed.

The presumption in section 356 is a rebuttable one, however, and it is a *question of fact* whether it has been rebutted. See *Metropolitan Life Ins. Co. v. Devore,* 66 Cal.2d 129, 137, 56 Cal.Rptr. 881, 886, 424 P.2d 321 (1967). Thus, if the presumption is rebutted, and the representations in the application in fact refer to an earlier time than the completion of the contract, under the Booms rule the duty to disclose will end at a time before the completion of the contract. (emphasis added.)

John Casey's statements in Part B of his application that he had not undergone treatment for alcoholism or drug dependency or abuse are presumed to have been representations of his state of health as of the date the contract was completed, not just the date he answered the questions. Plaintiffs must raise a genuine issue of material fact that shows this presumption can be rebutted and that John Casey's duty of disclosure ended at a time before the completion of the contract.

Defendant Old Line contends that Part A's statement that "it is represented that all statements in this application are true, full and complete, and bind all parties in interest under any policy applied for," together with the "good health" or "continued insurability" clause placed Casey on notice that he was obliged to correct his application responses to 3a and 3b of Part B. Plaintiffs contend that the "good health" or "insurability" clause is ambiguous, and the application could be interpreted as affirming that the statements in the application were true when made (i.e., May 21, 1992 for responses solicited in Part B).

■ It is a well-settled rule that all ambiguities must be interpreted against the insurer. *Metropolitan Life Insurance Co. v. Devore,* 66 Cal.2d 129, 136, 56 Cal.Rptr. 881, 424 P.2d 321 (Cal.1967). However, courts "will not engage in strained or tortured interpretation of the terms of an insurance contract in order to fabricate an ambiguity where

---

insurance contract upon Casey's failure to disclose a condition that was not inquired into on

the application.

none exists." *Lunardi v. Great–West Life Assurance Co.,* 37 Cal.App.4th 807, 820, 44 Cal.Rptr.2d 56 (1995). While rebutting the presumption of section 356 is generally regarded as an issue of fact, contract interpretation is a question of law. Therefore the issue of whether the application is ambiguous and supports Plaintiffs' asserted interpretation is amenable on a motion for summary judgment.

In this case, Part A of the application unambiguously informed the applicant that the entire insurance application consisted of Part A and one or more of Parts B and that a contract of insurance would only take effect if the first premium is paid in full "[w]hile there is no change in the insurability and health of all such persons from that stated in the application." The provision then seeks an affirmation that all statements in the application are true, stating, "It is represented that all statements in this application are true, full and complete, and bind all parties in interest under any policy applied for."

This provision unambiguously informs the insured that two conditions must be satisfied before an insurance policy will take affect. First, the applicant must pay the first premium in full, and second, there must not be any change in the insurability or health of the applicant from that stated in the application (defined as Parts A and B). The applicant then signs the application, affirming that all statements in the application are "true, full and complete" and bind all parties in interest. There is nothing in the language of the application or the circumstances under which John Casey completed Part A of the application that could rationally be interpreted as affirming the veracity of the questions in Part B only as of the date these questions were answered, or support the interpretation that an applicant need not inform the insurance company of any material changes in his response to the application questions. Even if the term "insurability" could be construed as unclear to a lay person, the requirement that there be no change in the health of the applicant from that stated in the application is clear.

In *Lunardi,* the court of appeals found that a similar "continued good health" provi-sion as that contained in Part A of Old Line's application was not ambiguous, despite typographical errors, and that it "inform[ed] the applicant that the answers to those questions in the application must still be true when the policy is delivered." The provision at issue in *Lunardi,* which was signed approximately six months before the applicant's diagnosis of leukemia but before the insurance premium was paid and policy was issued, provided:

> All statements and answers to the questions made in this application and any supplements to it are true and complete to the best of my knowledge and belief.... no insurance under this application shall take effect unless a policy has been delivered while there has been no material change, to the best of my knowledge, in the answers and statements continued (sic.) in this application and any supplements to it. 37 Cal.App.4th at 814, 815, 44 Cal.Rptr.2d 56.

Approximately three months after this part of the application was signed, the applicant underwent a physical examination by an independent contractor employed by the insurer and was found to be an "excellent risk" for insurance. The applicant was diagnosed with leukemia by his own doctor less than a month later, and hospitalized for over a month. Thereafter, the applicant sought to expedite the insurance application process, and signed an amendment to the insurance policy, declaring that "since the completion of the medical evidence form dated 13 November 1989 [this date should have been 8 August 1989] [¶] (1) The insured has not been examined or treated by a physician or health practitioner, except as required by Great–West Life. [¶] (2) The Insured has had no illness, disease, injury or operation ..." 37 Cal.App.4th at 817, 44 Cal.Rptr.2d 56. The insured died within two years of the issuance of the policy, and the insurer denied the claim based upon the applicant's misrepresentation about his health during the application process.

Relying upon the "continued good health" provision contained in the May 1989 application form, the court found that the applicant had a duty to disclose his subsequent diagnosis of leukemia. The court rejected the

plaintiffs' contention that this term was ambiguous, stating "[h]ere, the continued good health term is not ambiguous ... the provision ... informs the applicant that the answers to the questions in the application must remain true when the policy is delivered. Plaintiffs' remaining assertions of ambiguity are at best hypertechnical dissections of the language." *Lunardi,* 37 Cal.App.4th at 820, 44 Cal.Rptr.2d 56. The court also rejected the plaintiffs' argument that this provision was not pointed out to the applicant when he signed it, stating that the applicant was "bound by conspicuous provision of the document he signed" and was "obligated at [the time of delivery of the policy] to correct any misstatements or omissions in the representations regarding his health." *Id.*

Although there are a few differences between the good health provision in *Lunardi* and Old Line's insurance application, these differences are inconsequential. In *Lunardi,* the applicant affirmed that "[a]ll statements and answers to the questions made in this application and supplements to it are true and complete to the best of my knowledge." In Part A of the Old Line application, the application is defined as "Part A and one or more of Parts B," and the applicant is told that there cannot be any change in the insurability or health of the applicant from that stated in the application in order for the insurance policy to issue. If anything, Part A of Old Line's application places greater emphasis on the importance of the continued good health of the applicant by informing him that no policy will issue unless there is no change in the applicant's health.

Plaintiffs contend that their interpretation of Part A of the insurance application is supported by *Metropolitan Life Ins. Co. v. Devore,* 66 Cal.2d 129, 56 Cal.Rptr. 881, 424 P.2d 321 (1967). Plaintiffs' reliance upon *Devore* is misplaced since that case involved factual circumstances not present in this case. In *Devore,* the applicant was diagnosed with having arteriosclerotic heart disease after he had completed an application for insurance and responded to questions inquiring about his medical status. The applicant was not told of this diagnosis, however. After he submitted his application but before the policy was delivered, the applicant entered into the hospital for "rest and medication to prevent trouble" and was released a week later. The insurance company approved the issuance of a policy to Devore following his hospitalization (which the insurer did not know about), and issued a policy on an "intermediate basis, which required a higher premium that would be applicable for a man of the applicant's age who was in average health." The policy was delivered to Devore on November 30, at which time he paid a full year's premium. He also executed an enclosed document entitled "Application Amendment," which stated in part, "The said application, together with these amendments, is to be considered as the basis of and as a part of the contract of insurance. The said application, as amended, is correct and true, and I hereby ratify and confirm the statements therein made as of the date hereof." *Devore,* 66 Cal.2d at 133, 56 Cal.Rptr. 881, 424 P.2d 321. The amendment stated that the policy issued would bear the date of September 1, 1959.

Both the trial court and the California Supreme Court held that the insured reasonably understood the language of the amendment to mean that the insurance company "is satisfied with and is relying upon the application of September 2, 1959, and on the basis of the application the Company is issuing a substandard Intermediate policy if the insured ... authorizes said application to be amended so as to apply for said substandard policy at a higher rated premium and to include therein the other specific amendments. ..." *Id.* The court noted that "nowhere in the application was there any inquiry made as to the changes of status since the date of the original application, nor was there any indication that the company wished any additional information. The insured could reasonably understand that the sum and substance of the amendment was that the company was merely increasing the amount of the insurance." Further, the court noted that the insurance agent stated that no additional application or physical examination was made, and that the amendment was prepared by the company and forwarded with a *second* policy for delivery to the insured.

Under the circumstances present in *Devore*, i.e., the fact that the amendment only changed the terms of the insurance policy issued and did not seek any additional information from the insured, that the insured reasonably believed that a policy of insurance had already been approved and issued, and that the amendment simply changed the terms of that insurance policy, Devore's interpretation of the amendment as reaffirming his answers in the medical examination when they were given was reasonable. In this case, as in *Lunardi*, there are no factual circumstances that would lead John Casey to believe Part A merely changed the terms of an already existing contract of insurance, or that the insurance company had accepted his application based upon the answers contained in Part B without consideration of his responses to Part A. Unlike the amendment in *Devore*, Part A of Old Line's application requested additional information from John Casey, and explicitly informed the applicant that the application was not a contract for insurance and that no insurance contract would take effect until the applicant paid the first premium while there was no change in his health from that stated in the application.

No issues of fact have been raised that would rebut the statutory presumption that all statements made in Old Line's application were presumed to refer to the date the policy was issued.

Therefore, the court determines that as a matter of law, John Casey had a duty to disclose any material changes in his health that occurred between the time the application was filled out and the time the contract was completed.

## 2. *Materiality of the Misrepresentation*

■ "The materiality of a misrepresentation is a question of law." *Merced County Mut. Fir. Ins. Co. v. State*, 233 Cal.App.3d 765, 772, 284 Cal.Rptr. 680 (1991). The courts have looked to two different tests in determining if a misrepresentation is material. "Under the first test, '[m]ateriality is determined by the probable and reasonable effect that truthful disclosure would have had on the insurer in determining the advantages of the proposed contract.' [cites omitted.]

Thus, if the insurer would not have issued the policy but for the misrepresentations, the misrepresentations are considered material." *Trinh v. Metropolitan Life Ins. Co.*, 894 F.Supp. 1368, 1372 (N.D.Cal.1995). Under the second test of materiality, "[t]he fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." *Id.* at 1372, 1373; *Merced*, supra, 233 Cal.App.3d at 772, 284 Cal.Rptr. 680.

■ Under either test of materiality, John Casey's misrepresentations on the application for insurance are material. Both declarants on behalf of Old Line attest that Old Line would have rejected an application for life insurance from an individual who either currently is abusing alcohol and/or drugs or who has recently undergone treatment for alcohol or drug abuse. See Decl. of Charles Weidner, ¶ 22; Decl. Edward A. Loftus, ¶ 15. Mr. Loftus further declares that Old Line would not have issued the subject life insurance had it been apprised of Casey's treatment. *Id.* The undisputed testimony of an underwriter that the non-disclosed information would have affected the company's decision whether to insure the applicant is sufficient to establish that the requested information was material. *Taylor v. Sentry Life Ins. Co.*, 729 F.2d 652, 655 (9th Cir.1984); *Dinkins v. American Nat. Ins. Co.*, 92 Cal.App.3d 222, 154 Cal.Rptr. 775, 779 (Cal.App.1979).

Plaintiffs assert that a trier of fact is not required to believe the "post mortem" testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed. Although this finding has been applied in motions for directed verdict in following the principle that a jury need not accept the testimony of any particular witness, this argument is irrelevant to a motion for summary judgment where no factual dispute exists on the issue of materiality. See e.g. *Wilson v. Western National Life Ins.*, 235 Cal.App.3d 981, 995, 996, 1 Cal.Rptr.2d 157 (1991).

Given the undisputed evidence, the misrepresentation and concealment of Casey's treat-

ment for alcohol and drug abuse was material as a matter of law.

### 3. The applicant's knowledge

■ An applicant has the duty to disclose those changes in his health that he, acting in good faith, believed were material. *Miller, supra,* 789 F.2d 1336, 1339. In determining whether failure to disclose a material change in health justifies rescission, "[t]he applicant's knowledge and belief must be considered. First, there is no breach of the duty to disclose if the applicant is ignorant of the relevant information. Second, there is no breach of the duty to disclose if the applicant, acting in good faith, does not understand the significance of the information he fails to disclose. A lay person will not be held to the level of knowledge or understanding that a doctor or other expert might have had." *Id.* For example, in *Miller,* the Ninth Circuit held that an insurer was not entitled to rescind a policy where the insured failed to reveal "strange thoughts" which, unbeknownst to the insured at the time of his application for insurance was pending, were caused by a brain tumor. *Id.*

Plaintiffs contend that despite John Casey's 28–day in patient treatment at Ross Hospital for alcohol and benzodiazepine abuse, he might not have understood the reasons and/or medical implications of his stay at the hospital. Further, Plaintiffs contend that since the second blood test did not reveal any health-related problems or any indication of alcohol and/or drug use by Mr. Casey, Mr. Casey could have believed that his health had actually improved.

■ Whether or not John Casey knew of the total negative effect of his alcoholism upon his physical condition, he was certainly aware that he was an alcoholic and that the purpose of his 28–day, in patient stay at Ross Hospital was to treat his alcoholism and drug dependency. He knew that his condition and treatment were not temporary, and he was ordered to follow-up his in patient treatment by attending ninety AA meetings in a ninety day period, as well as attending weekly aftercare meetings with Ross Hospital.

John Casey was aware of the relevant information (his alcoholism and drug abuse and treatment) and its significance. He did not attribute his treatment at Ross Hospital to a cause unrelated to alcoholism or drug abuse. This is not a case where an applicant is treated for a medical disorder or is hospitalized, but is not informed of the nature of his medical condition. See, e.g., *Devore, supra,* where the applicant was diagnosed with arteriosclerotic heart disease, but not told of this diagnosis. Nor did John Casey experience symptoms of a disease inquired into on the insurance application that was not diagnosed prior to delivery of the policy. See, e.g., *Miller, supra.* Part B of the insurance application specifically asked Casey if he had received treatment or joined an organization for drug or alcohol abuse, or if he had been advised to discontinue the use of drugs or alcohol, and Part A of the application required Casey to affirm that all of his application responses (defined as Part A and one or more of Parts B) were true, full and complete.

An insurance applicant need not completely understand all effects of a health condition before a duty to disclose this information to the insurer will be triggered. In *Life Ins. Co. of North America v. Capps,* 660 F.2d 392, 394 (9th Cir.1981), the court found it sufficient for summary judgment purposes that the applicant was aware of her condition, symptoms, and treatment for a heart ailment, and that she was therefore obligated to truthfully answer an insurance company's question that asked whether she ever had experienced heart trouble, high blood pressure, or chest pains. In this case, decedent appreciated the significance of his alcoholism and drug abuse, sought treatment for it, and was advised to discontinue his drug and alcohol use and to join an organization for alcohol abuse treatment. Moreover, the life insurance application specifically sought this information from Mr. Casey and asked him to confirm the accuracy of his earlier responses.

### 4. Estoppel or Waiver by the Old Line

Plaintiffs contend that Mr. Casey's blood test on May 21, 1992, which revealed moderately elevated SGOT and SGPT levels and

raised the possibility of several medical anomalies ranging from temporary illness to excessive alcohol consumption, placed Old Line on notice of Casey's condition and estopped it from rescinding the policy. Plaintiffs also contend that at the time the policy was issued, "Old Line Life was clearly on notice of Mr. Casey's present medical condition and made the decision to insure the risk by adjusting the premium payments due under the policy." Opposition to Motion for Summary Judgment, p. 19.

Under California Insurance Code section 336, "[a]n insurer waives its right to receive withheld information only if it fails to make inquiries as to such information when the information is 'distinctly implied' in other facts that are disclosed." *Jaunich v. National Union Fire Ins. Co.*, 647 F.Supp. 209, 212 (N.D.Cal.1986). As noted by Plaintiffs, the results of the first test was inconclusive and could have indicated a number of medical conditions, including a minor illness. None of the information supplied by decedent was sufficient to put Old Line on notice of John Casey's alcoholism and drug abuse or treatment of these conditions.

In this case, the undisputed facts establish that (1) John Casey's in-patient treatment at Ross Hospital for alcohol and benzodiazepine abuse constituted a material change in his condition from that stated in his application; (2) John Casey had a continuing duty under California law to inform Old Line of any material changes in his health occurring prior to the issuance of the insurance policy; (3) Old Line would not have issued the insurance policy to John Casey had it known that he recently received treatment for alcoholism and drug abuse; (4) John Casey was aware that his treatment at Ross Hospital was for alcoholism and drug abuse and that he was directed to attend ninety AA meetings over a ninety day period (1 meeting per day); and (5) after John Casey was diagnosed as an alcoholic, spent 28 days in an in patient facility for the purpose of treating his alcohol and drug abuse and was ordered to continue treatment after his discharge, he represented on his insurance application that all responses to his application "are true" and did not correct his insurance application to reflect the fact that he had undergone treatment for alcohol and drug abuse.

Since John Casey made misrepresentations on his insurance application and these misrepresentations were material, Old Line properly rescinded the contract of insurance.

**B.** *Second Claim for Breach of Covenant of Good Faith and Fair Dealing*

"To prevail on a claim that the insurer has breached the implied covenant of good faith and fair dealing, the insured must show that (1) the insurer withheld benefits due under the policy and (2) the reason for withholding the benefits was unreasonable or without proper cause. *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1151, 271 Cal.Rptr. 246, 255 (1990)." *Sullivan v. Allstate Ins. Co.*, 964 F.Supp. 1407, 1415 (C.D.Cal.1997).

Since the Old Line's decision to rescind the life insurance policy based upon decedent's material misrepresentations was upheld, there cannot be any bad faith in its refusal to pay benefits. See, e .g., *Kopczynski v. Prudential Ins. Co.*, 164 Cal.App.3d 846, 849, 211 Cal.Rptr. 12, 14 (1985); *State Farm Fire and Casualty Co. v. Martin*, 872 F.2d 319, 321 (9th Cir.1989).

## V. CONCLUSION

For the reasons set forth above, Old Line's motion for summary judgment as to all claims in Plaintiffs' complaint and upon its third party complaint for declaratory relief is GRANTED.[5]

IT IS SO ORDERED.

---

5. Both parties have filed objections to evidence submitted by the other in support of and in opposition to the motion for summary judgment. These objections are addressed in a separate order.